BARNEY E. KNIGHT, Employee v. CANNON MILLS COMPANY, Self-Insured, Employer

No. 8610IC271

(Filed 19 August 1986)

1. **Master and Servant § 68— byssinosis—workers' compensation denied—findings supported by evidence**

The Industrial Commission did not err by finding that a byssinosis plaintiff was exposed to some cotton dust while he worked for defendant but that there was no credible evidence as to the extent of plaintiff's exposure where plaintiff's evidence as to the extent of his exposure was ambiguous and vague and there was independent evidence of plaintiff's lack of credibility as a witness.

2. **Master and Servant § 68— byssinosis—workers' compensation denied—finding that disease was caused by factors not related to occupation—supported by evidence**

The Industrial Commission's finding that plaintiff's lung disease was caused by factors unrelated to his occupation was supported by the evidence where there was medical evidence that plaintiff's lung disease could be explained entirely by his heavy cigarette consumption over many years; there was medical evidence that it was not clear that cotton dust played any contributory role in that there was a lack of evidence of the extent of exposure, Monday Morning Syndrome was absent, and plaintiff represented that his symptoms were no worse at work than at home and that they did not improve on weekends or vacations; and there was medical evidence that plaintiff had emphysema and that his degree of pulmonary impairment could be explained by his emphysema alone.

3. **Master and Servant § 68— cotton dust—estoppel not applied—no error**

The Industrial Commission did not err in a cotton dust case by failing to find facts on the issue of estoppel or by suppressing evidence relevant to estoppel where the record does not show that plaintiff's medical director committed perjury as alleged by plaintiff; the failure to submit forms to the Industrial Commission notifying it of an occupational injury or disease and the failure to obtain approval for payments of plaintiff's medical expenses did not deprive plaintiff of notice that his disease could have been compensable; payment of plaintiff's medical expenses by defendant was not an admission of liability; there was evidence that defendant believed the lung disease was not caused by exposure to cotton dust; the denial of compensation was not based on the time-barred defense but on plaintiff's failure to present sufficient credible evidence of the extent of exposure to cotton dust; and there was no reason to extend the estoppel doctrine to prevent defendant from denying the extent of plaintiff's exposure or that it caused the lung disease. N.C.G.S. § 97-58(c) (1985), N.C.G.S. § 97-90, N.C.G.S. § 97-92 (1985).

APPEAL by plaintiff from an Opinion and Award of the North Carolina Industrial Commission filed 30 September 1985. Heard in the Court of Appeals 10 June 1986.

*Lore & McClearen, by R. James Lore, for plaintiff appellant.*

*Teague, Campbell, Dennis & Gorham, by George W. Dennis III, for defendant appellee.*

BECTON, Judge.

This appeal is from a denial of workers' compensation benefits claimed by Barney E. Knight under N.C. Gen. Stat. Sec. 97-53(13) (1985).

I

Barney Knight is in his late fifties. His formal education ended after the first grade; he cannot read, write, or sign his name; and he does not know his date of birth. The precise history of his employment is the subject of some dispute, but all parties agree that he worked on and off in the textile industry until 16 March 1981 when he last worked for defendant Cannon Mills.

Knight has chronic obstructive pulmonary disease which, according to Dr. Douglas G. Kelling, Jr., a pulmonary specialist and member of the Commission's Textile Occupational Disease Panel, contributes to his inability to engage in certain activities. The pulmonary disease is a combination of chronic bronchitis, emphysema and asthma. Knight has a long history of cigarette smoking, although the evidence is conflicting as to the average number of packs per day. Other significant conditions contributing to his physical impairment include: (1) chronic alcoholism; (2) a leg injury causing limited motion in his right knee, and (3) a clouded left cornea causing significant visual impairment. These conditions are not work-related.

Knight's lung disease was first diagnosed in 1977 by Cannon Mills' consulting physician, Dr. Kelling. According to his diagnosis, Knight's lung disease appeared to be "on the basis of his heavy cigarette smoking and exposure to cotton dust." He recommended that Knight work in areas where his exposure to cotton dust would be minimal, that he have annual lung function tests, that he stop smoking, and that he regularly see a physician

for treatment of his lung disease. This report was sent to Dr. Vernon Burkhart, medical director for Cannon Mills. In early 1978, Dr. Burkhart stamped Knight's employment records to indicate that he should not work in dust or toxic fumes and that "workers' compensation" should be notified before Knight took a leave of absence or was terminated. Knight was then transferred to the yard force where dust exposure was minimal. He worked in the yard and the bleachery until his last day of work in 1981. The Industrial Commission was never notified by Cannon Mills of Knight's condition.

Cannon Mills claims, and Knight denies, that when Dr. Burkhart met with Knight in 1978, the doctor showed to him and explained the 1977 report and diagnosis by Dr. Kelling. Dr. Burkhart testified that he read to Knight a letter dated 12 January 1978, which stated that, according to separate tests conducted by Cannon Mills and Dr. Kelling, Knight's condition may be due to allergies and exposure to lung irritants, including smoke and cotton dust. Dr. Burkhart testified that after he read the letter to Knight, Knight marked it with an "X." Knight denies he was told of Dr. Kelling's diagnosis. He testified that Dr. Burkhart handed him a letter, without explanation and with an "X" already on it.

Knight claims he was first told that his lung disease might have been caused in part by cotton dust exposure by Dr. Kelling in October 1983. He filed a claim for benefits on 6 March 1984. Knight was then referred by the Commission to Dr. Charles D. Williams, Jr., another member of the Textile Occupational Disease Panel. Dr. Williams' report was placed in the record. Although Dr. Kelling had recorded Knight's smoking history as one-half pack per day for thirty-seven years, Dr. Williams recorded it as three to four packs per day for over forty years until 1983 when Knight cut down to one-half pack per day. Dr. Williams' extensive and detailed report states in part:

> This combination of chronic bronchitis, pulmonary emphysema, and asthma is frequently referred to as chronic obstructive pulmonary disease. The entire problem could be accounted for by his many years of heavy cigarette smoking. It would not be necessary to invoke any other etiology to produce this degree of impairment. It is not at all clear to this examiner whether cotton dust played any contributory

role in his impairment. The reasons for this uncertainty are numerous. It is not clear how much of his work experience was carried out in an at-risk area. He certainly does not give a history of "Monday Morning Syndrome"; however, he is a very poor historian with admittedly defective memory. It would not appear that his respiratory symptoms were any worse at work than at home. I do not find any pulmonary function studies which were clearly labelled as being done before and after exposure to the work environment. The pulmonary function studies which are available indicate a significant degree of airway obstruction and might not show evidence of cotton dust sensitivity even if such were present previously. Cotton dust has been implicated as a cause of chronic bronchitis even in nonsmokers and could have played a contributory role in the production of his chronic obstructive pulmonary disease.

Cannon Mills denied liability for Knight's disease on the ground that it was not work-related. It also pleaded that Knight's claim had been filed too late.

At the hearing before the deputy commissioner, Knight offered evidence to show that Cannon Mills should be estopped to plead that his claim was time barred. Knight alleged that Cannon Mills induced him to delay filing a claim by paying his medical bills and by failing to tell him that his lung disease was work-related. Knight also asserted that Cannon Mills knew Knight had an occupational lung disease in 1977, failed to notify the Commission of this valid claim and failed to get the Commission's approval for medical payments made on Knight's behalf.

Knight also alleges that Cannon Mills is engaged in a pattern of intentionally deceiving employees about the causes of their lung diseases. He claims Cannon Mills has conspired with doctors who conduct medical examinations of Cannon Mills' employees to suppress knowledge of the occupational nature of the lung diseases they discover. He alleges that payments of medical bills are made without Commission approval in order to further suppress this information and to prevent the Commission from notifying the employees.

The deputy commissioner suppressed certain evidence offered by Knight at the hearing. The evidence suppressed by the

Knight v. Cannon Mills Co.

deputy commissioner proved that Cannon Mills paid for the drug prescriptions and medical expenses relating to Knight's respiratory problems from 1977 to 1984 and that some of the bills contained words such as "workers' compensation." The deputy commissioner originally allowed the evidence at the hearing and reserved ruling on Cannon Mills' objections until after all the testimony. In her opinion and award, the deputy commissioner addressed Cannon Mills' objection and explained that Knight had offered the evidence "in order for him to show action of Cannon Mills which would estop Cannon Mills from pleading the two-year bar of G.S. 97-58." She then sustained the objection.

The deputy commissioner also ruled on Cannon Mills' objection to a hypothetical question that had been posed to Dr. Kelling. The objection was based on the ground that it assumed facts not in evidence. This ruling was also reserved pending introduction of the assumed facts, because Dr. Kelling's testimony had been taken out of turn. In her opinion and award, the deputy commissioner sustained the objection to the hypothetical question.

The deputy commissioner also made the following relevant findings of fact:

1. [Plaintiff's] . . . memory is poor.

2. Beginning in the 1940's plaintiff worked for various textile companies, including Springs Industries and defendant, with whom he started employment in 1953. Although plaintiff was exposed to some cotton dust while he worked for defendant, there is no credible evidence as to the extent of plaintiff's exposure.

3. Plaintiff began smoking an average of three to four packs of cigarettes per day at the age of fourteen. In 1983 or 1984, he decreased his consumption to a half a pack of cigarettes per day. As a result of his heavy cigarette consumption, plaintiff has chronic obstructive pulmonary disease, which is a combination of chronic bronchitis, pulmonary emphysema, and asthma. There is no other significant etiological factor involved in the development or aggravation of plaintiff's chronic obstructive pulmonary disease.

Based on these findings, the deputy commissioner concluded as a matter of law:

Plaintiff's chronic obstructive pulmonary disease is due to causes and conditions which are not characteristic of the textile industry, is due to causes to which the general public is equally exposed outside the textile industry, and is, therefore, not compensable. G.S. 97-53(13).

Compensation was denied, and the full Commission affirmed.

On appeal, Knight argues that (1) the Commission erred in suppressing evidence of Cannon Mills' past conduct because that evidence is relevant to Knight's theory of estoppel; (2) the evidence and findings do not support the conclusion that Knight did not have an occupational disease; (3) the Commission abused its discretion in finding there was no credible evidence of the extent of exposure; and (4) the finding that Knight's exposure to cotton dust did not aggravate his lung disease is not supported by competent evidence.

We find no merit in Knight's arguments, and we affirm the decision below. First, we consider Knight's second, third and fourth arguments, relating to the sufficiency of the evidence and findings. Then we address his first argument, involving equitable estoppel.

## II

Our review of an Opinion and Award by the Commission is limited to questions of law. We may consider whether there is competent evidence to support the Commission's findings of fact and whether the findings support the conclusions of law. *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E. 2d 101 (1981). The Industrial Commission is "the sole judge of the credibility of the witnesses and the weight to be given to their testimony. The Commission may accept or reject the testimony of a witness solely on the basis of whether it believes the witness or not." *Hilliard v. Apex Cabinet Company*, 305 N.C. 593, 595, 290 S.E. 2d 682, 683-84 (1982) (citation omitted). The appellate courts cannot disturb the Commission's findings if they are supported by competent evidence, even when there is evidence to support contrary findings. *Id.*

Knight argues that the Commission abused its discretion in making findings not supported by competent evidence. We disagree.

A

[1]　Knight challenges the finding that "[a]lthough plaintiff was exposed to some cotton dust while he worked for defendant, there is no credible evidence as to the extent of plaintiff's exposure."

At the outset, we note that the Commission's finding must be taken in context. The first part of the sentence acknowledges some exposure, and the second part states there is no competent evidence of the extent of the exposure. Thus, the Commission found there is evidence of some degree of exposure, but that there is insufficient credible evidence of the various exposure levels and the duration of the exposure to support a finding that it contributed to or aggravated the lung disease.

At the hearing before the deputy commissioner, plaintiff's counsel called Dr. Kelling to testify first. Dr. Kelling was asked to answer questions based on an assumption of a long series of facts regarding numerous intermittent periods from 1944 to 1981 during which Knight apparently worked in the textile industry. Many of these short periods of employment were in jobs involving some exposure to cotton dust. Defense counsel objected to the introduction of facts not in evidence. The deputy commissioner allowed the doctor to testify and reserved ruling on the objection until plaintiff had the chance to introduce those facts into evidence during his testimony.

When plaintiff testified, the following exchange took place:

Q. Were you present this morning when I was asking questions to Dr. Douglas G. Kelling, Jr. about you? Were you present here in the Courtroom?

A. Yes, sir.

Q. Did you hear me ask him about places where you might have been employed and what you might have done in those places and when you were employed there and what the dust conditions were? Did you hear me ask him that?

A. Yes, sir.

Q. Now, to the best of your knowledge, was the times and so forth that I asked him that question about correct?

A. Right — yes, sir — you asked it.

We find it difficult to draw any conclusion from this ambiguous testimony, and we conclude the Commission did not abuse its discretion in finding that it lacked credibility. Even assuming Knight meant to say "yes, the dates, places and conditions of my exposure were accurate," the details of the *extent* of the exposure were vague in the original hypothetical question to Dr. Kelling, and there is independent evidence of Knight's lack of credibility as a witness. His testimony, especially on cross-examination, revealed that his memory is very poor, and Dr. Williams reported that Knight was a "very poor historian," with an "admittedly defective memory." The evidence suggests that Knight gave conflicting accounts of his smoking history to two doctors and that he denied a childhood history of asthma that was reflected in his medical records. Other weaknesses appear in his testimony on cross-examination.

We conclude that the deputy commissioner did not err in excluding the facts assumed in the hypothetical posed to Dr. Kelling. The Commission was free to assess the credibility of this testimony as to these periods of exposure.

Knight also relies on documentary evidence to demonstrate that there was competent evidence of the extent of exposure. Knight asserts that the attorney for Cannon Mills would not stipulate as to the admissibility of many of these documents. Apparently, there was some confusion about which documents Cannon Mills would stipulate in evidence. This may be a result of a late change in defense attorneys. Nonetheless, the alleged documents are not part of the record, and their absence from the record is not the subject of an exception or an assignment of error. Therefore, they are not properly considered by this Court.

Other documents were stipulated in evidence and can be considered. We have reviewed these records and cannot say the Commission abused its discretion in finding that they did not establish the extent of Knight's exposure. The employment records go back only to July 1953. They indicate the occupations of Knight, but not his levels of exposure. As of 23 January 1977, he was transferred to the street force, outside the mill. Thereafter, he worked outside the mill or in the non-dust environment of the bleaching department.

Knight also relies on the records of cotton dust level measurements at Cannon Mills. But Knight has not shown that these records relate to the specific times or areas in which he worked. Although they may support inferences contrary to the Commission's findings, the Commission was free to conclude that they failed to provide credible evidence of this plaintiff's degree and duration of exposure.

We also reject Knight's implicit argument that because Dr. Kelling believed Knight's lung disease was caused by cotton dust exposure, the pulmonary function studies he relied on must be competent evidence of exposure. Dr. Williams explained that none of these pulmonary function studies was clearly labeled as having been conducted before and after Knight's exposure to the work environment. Furthermore, there is no dispute that Knight was exposed to cotton dust; the controversy is whether the extent of the exposure was sufficient to convince the Commission that it was a significant causal factor in the development or aggravation of the lung disease. Neither the pulmonary function studies nor Dr. Kelling's testimony provides clear evidence of the extent of Knight's exposure. There may be credible evidence of *some* exposure, without sufficient credible evidence of its degree or duration.

Finally, we hold that Cannon Mills did not waive its objection to the evidence of the extent of exposure by receiving an unfavorable response to a hypothetical question. Dr. Kelling stated on cross-examination that his opinion regarding Knight's exposure would not change if the Commission found that Knight had worked at Cannon Mills in dust for less than eight years. But this response may have been based on Dr. Kelling's belief that Knight had worked in dust for many years before working for Cannon Mills. Further, the question was hypothetical and did not operate as an admission by the propounder that Knight's exposure had been at a certain level. Moreover, even Dr. Kelling testified that, as a rule of thumb, it takes ten years of continuous exposure before the permanent effects of cotton dust are noted.

We do not agree with Knight that all the evidence, including defendant's, clearly establishes the extent of Knight's exposure. Knight clearly could not remember the extent to which he was exposed, let alone where or when he worked in textile jobs, and

none of the reports or studies demonstrates the level or duration of Knight's exposure. In fact, Dr. Williams specifically stated in his report, "It is not clear how much of [Knight's] work experience was carried out in an at-risk area."

The Commission did not abuse its discretion in finding no credible evidence of the extent of exposure.

B

[2]  Knight asserts that there is no competent evidence to support the finding and conclusion that the disease was caused by factors unrelated to his occupation. We disagree.

Contrary to Knight's assertions, Dr. Williams' report provides ample evidence to support the Commission's finding. He clearly stated that Knight's lung disease could be explained entirely by his heavy cigarette consumption over many years. Dr. Williams also reported that it was "not at all clear to this examiner whether cotton dust played *any contributory role* in his impairment." (Emphasis added.) He cited numerous reasons for this uncertainty, including the lack of evidence of the extent of exposure, the absence of any history of "Monday Morning Syndrome" (which would indicate that the periodic return to a dusty work area was causing the lung problem), and Knight's representations that his symptoms were no worse at work than at home and that they did not improve on weekends or vacations.

Both Drs. Kelling and Williams found that Knight had emphysema. Dr. Kelling testified that Knight's degree of pulmonary impairment could be explained by his emphysema alone. Dr. Kelling also testified that there is nothing in the medical literature that establishes to a reasonable degree of medical certainty that emphysema is caused or accelerated by exposure to cotton dust. There was strong evidence that Knight's cigarette smoking — three to four packs per day for over forty years — caused the lung disease.

The Commission found that cotton dust did not contribute to Knight's disease, although there is evidence in the record to the contrary. For example, Dr. Williams conceded at the end of his report that:

Cotton dust has been implicated as a cause of chronic bronchitis even in non-smokers and could have played a contribu-

tory role in the production of [Knight's] chronic obstructive pulmonary disease.

And, as discussed above, the deputy commissioner was free to interpret and believe Knight's testimony regarding the extent of his exposure. Nonetheless, we may not overrule the Commission's findings solely because there is evidence to the contrary.

### C

For the reasons stated in Part B, *supra*, we find no error in the Commission's finding that cotton dust exposure did not aggravate Knight's lung disease. Dr. Williams' report clearly indicated his opinion that Knight's *entire* lung problem could be accounted for by his cigarette smoking. He said, "It would not be necessary to invoke any other etiology to produce this degree of impairment." He stated it was not clear to him that cotton dust exposure "played any contributory role in [Knight's] impairment."

Again, Knight cites certain testimony of Dr. Kelling in an attempt to show that the exposure aggravated the lung disease. But this was not the only evidence in the case. It is the Commission's role to resolve conflicts in the evidence.

### III

[3] Knight's final argument is that the facts of this case raise the issue of estoppel and that, because compensation in this case may depend on estoppel, the Commission erred in failing to find facts on this issue. He argues that the Commission erred in suppressing evidence relevant to the estoppel issue and acted under a misapprehension of the law.

### A

The doctrine of estoppel may be applied in workers' compensation cases. *Godley v. County of Pitt*, 306 N.C. 357, 293 S.E. 2d 167 (1982). It has been applied to prevent an insurer from denying that an injured party was an employee within the terms of the insurance policy when premiums or other benefits had been accepted by the insurer. *See, e.g., Godley* (insurer accepted premiums); *Aldridge v. Foil Motor Company*, 262 N.C. 248, 136 S.E. 2d 591 (1964) (insurer accepted premiums); *Pearson v. Newt Pearson, Inc.*, 222 N.C. 69, 21 S.E. 2d 879 (1942) (accepted benefits of decedent's status as employee); *Garrett v. Garrett & Garrett*

*Farms,* 39 N.C. App. 210, 249 S.E. 2d 808 (1978) (insurer accepted premiums), *disc. rev. denied,* 296 N.C. 736, 254 S.E. 2d 178 (1979). It has also been applied to prevent an employer from pleading a time bar in defense of an action. *See, e.g., Belfield v. Weyerhaeuser Company,* 77 N.C. App. 332, 335 S.E. 2d 44 (1985).

The rationale for the application of estoppel in all of these cases is that it would be inequitable to allow a party to accept the benefits of a certain relationship or course of conduct and then later to deny the relationship or to maintain a position inconsistent with the previous course of conduct. *See Godley.* For example, it would be unfair to accept premiums and then deny coverage. And it would be inconsistent and unjust to induce an employee to delay the filing of a claim by telling him that it is unnecessary or that "he will be taken care of," thus lulling him into a sense of security, and then to attack the claim for untimeliness. *See Belfield,* 77 N.C. App. at 336-37, 335 S.E. 2d at 47 (quoting 3 A. Larson, The Law of Workmen's Compensation, Sec. 78.45, at 15-302 to -305 (1983)).

### B

Knight contends that the facts in this case are sufficient to estop Cannon Mills to plead the two-year time bar in N.C. Gen. Stat. Sec. 97-58(c) (1985). He alleges that Cannon Mills knew his lung disease was caused by cotton dust as early as 1977 or 1978 because it had Dr. Kelling's diagnosis and report. This report said that exposure to dust would aggravate Knight's condition; that he would be transferred to a non-dust area; and that he should wear a respirator, see a doctor regularly, and quit smoking. Knight was transferred on 16 January 1978 to a non-dust area.

Knight also asserts that Cannon Mills paid his physician, hospital and drug bills from 27 September through 9 July 1984. He notes that Cannon Mills paid only those bills related to Knight's lung problems and that it paid them even after he stopped working. Some of the bills were apparently labeled as expenses incurred in connection with a program designed to identify people who may have occupational lung diseases, indicated by "severe respiratory problems." Some payments were stamped with directions to "notify workers' compensation" before any leave of absence or termination. Some contained the notation "workman's comp.," allegedly in Dr. Burkhart's handwriting.

Knight contends that Cannon Mills failed (1) to notify the Industrial Commission that Knight had an occupational lung disease and (2) to obtain approval for the payment of Knight's medical bills, as it was required to do by N.C. Gen. Stat. Secs. 97-90 and -92 (1985). He also testified that Dr. Kelling's diagnosis was withheld from him until 1983.

Finally, Knight suggests that Dr. Burkhart perjured himself by giving sworn statements in answers to interrogatories that were inconsistent with his testimony before the Commission.

## C

Before addressing the issue of estoppel, it is necessary to address some of Knight's allegations. First, the record, considered in context, does not conclusively show that Dr. Burkhart committed perjury. Dr. Burkhart stated that Cannon Mills had no notice of a "claim" of injury or occupational disease before the claim was actually filed in 1984. This is not in conflict with the fact that he knew of the 1977 diagnosis naming cotton dust as one of several possible causes of Knight's disease. Also, Dr. Burkhart gave a negative response to the specific question whether he had any agreement with Dr. Kelling or a certain clinic to withhold knowledge from Knight about his diagnosis. This is essentially consistent with Dr. Burkhart's explanation that the agreement was not to withhold information, but rather to channel it through Dr. Burkhart who would explain the testing and diagnosis to Knight. And finally, the apparent conflict between his statement that Cannon Mills had no agreement with drugstores to provide free drugs to Knight and his testimony that Cannon Mills paid for Knight's drugs since 1981 may be explained by his lack of knowledge of any formal agreement. Although the Commission had the discretion to find that these responses were less than candid, or wholly untruthful, we cannot say, on the record before us, that Dr. Burkhart committed perjury.

It is also important to note that, contrary to Knight's contention, the submission of forms to the Industrial Commission to notify it of an occupational injury or disease does not trigger a statutory process by which Knight would have received notice that his disease may be compensable. The statute requires an employer to report any injury by accident if it keeps the employee from work for more than one day. G.S. Sec. 97-92(a). Pre-

sumably this would include notice of an occupational disease, which is considered an injury by accident. *See* G.S. Sec. 97-52. But this notice requirement does not invoke the jurisdiction of the Commission without the employee filing a claim. *Perdue v. Daniel International, Inc.*, 59 N.C. App. 517, 296 S.E. 2d 845 (1982), *disc. rev. denied*, 307 N.C. 577, 299 S.E. 2d 647 (1983). Moreover, because the statute provides a penalty for failure to comply, *see* G.S. Sec. 97-92(e) (five to twenty-five dollar fine), and because the reports are kept private and used only for statistical purposes, an employer's failure to notify the Commission does not raise an estoppel claim. *Poythress v. J. P. Stevens and Company*, 54 N.C. App. 376, 385, 283 S.E. 2d 573, 579 (1981), *disc. rev. denied*, 305 N.C. 153, 289 S.E. 2d 380 (1982). Furthermore, if such a report may be used against the employer as a declaration against interest, *see Carlton v. Bernhardt-Seagle Company*, 210 N.C. 655, 188 S.E. 77 (1936), it would be unfair to require the filing of a damaging report when an employer does not believe a lung disease is an occupational disease.

For similar reasons, the failure to obtain approval for payments of medical expenses does not raise an estoppel claim. *See* G.S. Secs. 97-25, -59, -90; *Smith v. American & Efird Mills*, 305 N.C. 507, 290 S.E. 2d 634 (1982) (discussing the requirement of obtaining approval for medical payments). Even assuming prior approval is required when the disease is not clearly occupational, *see Matros v. Owens*, 229 N.C. 472, 50 S.E. 2d 509 (1948), the process of filing for approval does not result in notice to the claimant; the statute provides a penalty for noncompliance, *see* G.S. Sec. 97-90(b) (misdemeanor); and its purpose (to ensure that medical service providers are not overcharging for services and products) is unrelated to the employee's claim.

Finally, we address Knight's argument that the evidence suppressed by the Commission—the records of payments for physician, hospital and medical expenses—should have been allowed because it is relevant to estoppel. Knight argues that the payment of medical bills for a lung disease is inconsistent with the claim that the disease is not work-related. In *Biddex v. Rex Mills, Inc.*, 237 N.C. 660, 75 S.E. 2d 777 (1953), the Supreme Court considered whether to apply the doctrine of estoppel to prevent an employer from contesting liability because it had paid the employee's medical bills over an extended period of time under cir-

cumstances designed to lull the employee into a false sense of security. *See id.* at 662, 75 S.E. 2d at 779-80. The Court reasoned:

A commendably large number of our employers provide prompt medical examination, first aid, and hospital care for their employees in case of accident without regard to the nature of the injury, if any, that may result. Frequently, it is purely precautionary. When liability for the medical care of an employee who has suffered an accident is voluntarily incurred by the employer, the bills therefor must be approved by the Commission before the employer can demand reimbursement from its insurance carrier. In this manner such expenditures are kept within the schedule of fees and charges adopted by the Commission. G.S. 97-26.

This humanitarian conduct on the part of the employees of the State is permitted by the statute. And aside from any statutory provision on the subject, *we are committed to the view that such conduct cannot in any sense be deemed an admission of liability.*

*Id.* at 664, 75 S.E. 2d at 780-81 (citations omitted and emphasis added).

We recognize that, in the case at bar, Cannon Mills did not get the approval of the Commission for its payments. But, as discussed above, this requirement is enforced by statutory penalty; does not trigger any procedure helpful to Knight; and is designed to keep fees within the schedule, not to protect or to inform claimants.

D

Notwithstanding the assertion of facts inapplicable to the issue of estoppel, we agree that Knight has produced sufficient evidence to raise the issue of estoppel as it traditionally has been applied. Although there is no evidence that an agent for Cannon Mills made explicit statements designed to induce Knight to delay filing a claim, *see Belfield* (Defendant's agent specifically told claimant that she would take care of the paperwork in his case.), there is strong evidence that Cannon Mills knew of the possibility that Knight's lung disease was caused in part by exposure to cotton dust, and there is some evidence that Cannon Mills intentionally withheld this information from Knight. *See Dowdy v.*

*Fieldcrest Mills, Inc.*, 308 N.C. 701, 716, 304 S.E. 2d 215, 224 (1983).

Of course, there is competent evidence to suggest that Cannon Mills believed the lung disease was not caused by exposure to cotton dust. The diagnosis and the letter mentioned several other significant causes, and there was testimony indicating that the "workers' comp." stamp was used only to indicate the proper account to debit, not to suggest that the payments were for a compensable disease.

The resolution of this factual dispute was unnecessary because it was not relevant to compensation in this case. The Commission did not rely on the time bar defense to deny the claim. It based its decision to deny compensation on Knight's failure to present sufficient credible evidence of the extent of exposure to cotton dust and that the exposure caused or aggravated the lung disease. Without such evidence, the Commission found and concluded that the disease was caused by Knight's extensive smoking history and not by exposure to cotton dust.

Thus, although withholding knowledge may raise an estoppel claim, there was no error in this case. The Commission understood the law and reserved ruling on the estoppel evidence until it was necessary to address it.

E

At oral argument before this Court, counsel for Knight suggested that we extend the application of the estoppel doctrine to prevent Cannon Mills from denying (1) the extent of Knight's exposure and (2) that it caused the lung disease. This would, of course, prevent Cannon Mills from denying liability. In support of this argument, Knight suggests that Cannon Mills is using a secret, illegal fund to pay for medical expenses associated with its employees' lung diseases in order to avoid paying workers' compensation benefits. This is accomplished, according to Knight, by a widespread corporate conspiracy to suppress information from illiterates, to withhold information from the Commission, and to make illegal (unapproved) medical payments—and then to deny liability and plead the time bar.

We see no reason to extend the estoppel doctrine as Knight suggests. A defendant would not be able to plead the time bar on

the facts alleged by Knight because they tend to demonstrate conduct designed to delay the filing of a claim. As mentioned above, this is a logical application of estoppel: the reliance on the delay as a defense is inconsistent with the prior conduct intended to cause the delay. Knight argues that his well-documented bad memory, combined with Cannon Mills' suppression of knowledge, should be sufficient to estop the denial of exposure and causation because Knight would have remembered more if his claim were heard in 1978. But there is no reason to believe that Knight would have been a more credible witness or would have remembered the degree and duration of his exposure levels during the intermittent periods of his textile employment back to 1944. Moreover, the failure of proof on these issues was not based solely on the lack of credibility of Knight's testimony. The records offered by Knight were insufficient, and at least one independent expert medical witness believed Knight's smoking, rather than his exposure to cotton dust, was the probable cause of his lung disease. In any event, the remedy designed to protect plaintiffs from unfair delay is the application of estoppel to prevent a time bar defense. Moreover, we cannot extend the doctrine of estoppel to conflict with the law and policy of *Biddex*.

IV

For the reasons set forth above, the Opinion and Award of the Industrial Commission is

Affirmed.

Judges JOHNSON and COZORT concur.