DAVID GROSS, Employee, Plaintiff v. GENE BENNETT CO., Employer,
AMERICAN HOME ASSURANCE COMPANY, Carrier, Defendants

No. COA10-29

(Filed 18 January 2011)

**1. Workers' Compensation— no determination of compensable injury—additional medical treatment—Parsons presumption inapplicable**

The Industrial Commission erred in a workers' compensation case by applying the *Parsons* presumption. Where there was no previous finding of compensability by the Industrial Commission, no previous admission of compensability by the employer, and no agreement as to compensability between the parties, the *Parsons* presumption was not applicable.

**2. Workers' Compensation— compensable injury—expert testimony—medical causation—not sufficient**

The Industrial Commission erred in a workers' compensation case by concluding that plaintiff's disk herniation injury was caused by a compensable injury. Where plaintiff's medical expert opinion as to medical causation did not rise above the level of mere possibility, the Industrial Commission's findings of fact as to medical causation were not supported by competent evidence.

Appeal by defendants from an Opinion and Award entered 6 October 2009 by the North Carolina Industrial Commission. Heard in the Court of Appeals 18 August 2010.

*Anthony D. Griffin, for plaintiff-appellee.*

*Cranfill Sumner & Hartzog LLP, by James B. Black IV, for defendant-appellants.*

STEELMAN, Judge.

Where there was no previous finding of compensability by the Industrial Commission, no previous admission of compensability by the employer, and no agreement as to compensability between the parties, the *Parsons* presumption is not applicable. Where Dr. Allen's opinion as to medical causation did not rise above the level of mere possibility, the Industrial Commission's findings of fact as to medical causation were not supported by competent evidence.

**GROSS v. GENE BENNETT CO.**

[209 N.C. App. 349 (2011)]

## I. Factual and Procedural History

David Gross ("plaintiff") was working for Gene Bennett Co. ("Bennett") as a steel fabricator/welder/machinist on 5 March 2007, when he fell through an eight-foot ceiling, falling approximately ten to twelve feet before hitting the concrete floor. Plaintiff was treated at Southeastern Regional Medical Center for his injuries, and was subsequently treated by Dr. Thomas Florian at Southeastern Occupational Healthworks. Dr. Florian released plaintiff to return to full duty on 1 May 2007. Defendants accepted plaintiff's workers' compensation claim on a medicals-only basis. Plaintiff sought further treatment from Dr. David R. Allen, an orthopedic surgeon, on 30 August 2007 and 25 March 2008. During the course of his treatment, two MRIs were performed on plaintiff's lower back. The first MRI, on 17 August 2007, showed degenerative disc disease at L3-4 and L4-5, with a mild disc bulge at L4-5 and L5-S1. A second MRI, on 9 May 2008, showed a disc extrusion or herniation at L4-5.

In an Opinion and Award entered on 6 October 2009, the North Carolina Industrial Commission concluded that plaintiff's then "current low back condition was a compensable progression from the injuries he sustained in his March 5, 2007 fall." The Full Commission awarded plaintiff temporary total disability from 6 March 2007 continuing until plaintiff was able to return to work, or until further order of the Commission. Defendants were also ordered to pay for any medical treatment plaintiff received for his low back condition since his release from Dr. Florian's care on 1 May 2007, and to pay for any future treatment that may be necessary.

Bennett and American Home Assurance Company (collectively "defendants") appealed on 3 November 2009.

## II. *Parsons* Presumption

[1] Defendants contend that the *Parsons* presumption is not applicable to the facts of this case. We agree.

The Commission's first conclusion of law states:

> Based upon the greater weight of the evidence and medical testimony, particularly assigning greater weight to Dr. Allen's testimony, the Full Commission concludes that Plaintiff's current low back condition is a compensable progression from the injuries he sustained in his March 5, 2007 fall. *See Perez v. American Airlines*, 174 N.C. App. 128 (2005).

In *Parsons v. Pantry Inc.*, this Court held that where the Commission has made a determination that a worker has suffered a compensable injury, there is a presumption that additional medical treatment is causally related to the original injury. 126 N.C. App. 540, 542, 485 S.E.2d 867, 869 (1997). In this situation, the burden of proof is shifted from the plaintiff to the defendant "to prove the original finding of compensable injury is unrelated to her present discomfort." *Id.* In *Perez v. American Airlines/AMR Corp.*, we held that this presumption was applicable where the employer had filed a Form 60, admitting compensability of the injury. 174 N.C. App. 128, 136, 620 S.E.2d 288, 293 (2005). *Perez* also held that a presumption of continuing disability was created by a Form 21 agreement, citing to *Kisiah v. W.R. Kisiah Plumbing*, 124 N.C. App. 72, 77, 476 S.E.2d 434, 436 (1996), *disc. review denied*, 345 N.C. 343, 483 S.E.2d 169 (1997). *Id.*

In each of these situations there was a determination of compensability of the original injury, either by the Commission (*Parsons*), by admission of the employer (*Perez*), or by agreement of the parties (*Kisiah*). The presumption arose because of the prior determination of compensability.

In the instant case, there was no prior determination of the compensability of plaintiff's injuries, either by the Commission, the admission of the employer, or by agreement of the parties. In this case, Industrial Commission Forms 18, 19, 22, 33 and 33R were filed with the Commission. The parties stipulated that "[d]efendants accepted this claim on a medicals-only basis." There was no stipulation that plaintiff suffered a compensable injury.

We hold that in the absence of an admission of compensability of an injury by the employer or an agreement between the parties, the *Parsons* presumption cannot arise at the initial hearing on compensability before the Commission. "In a workers' compensation claim, the employee has the [initial] burden of proving that his claim is compensable." *Holley v. Acts, Inc.*, 357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003) (citations and internal quotation marks omitted).

Defendants accepted plaintiff's claim on a medicals-only basis. It has long been the law of this State that acceptance of a claim on a medicals-only basis "cannot in any sense be deemed an admission of liability." *Biddix v. Rex Mills*, 237 N.C. 660, 664, 75 S.E.2d 777, 781 (1953); *cited with approval in Knight v. Cannon Mills Co.*, 82 N.C. App. 453, 467, 347 S.E.2d 832, 841 (1986) (citations omitted), *disc. review denied*, 318 N.C. 507, 349 S.E.2d 861 (1986); *construed in*

GROSS v. GENE BENNETT CO.

[209 N.C. App. 349 (2011)]

*Gore v. Myrtle/Mueller*, 362 N.C. 27, 653 S.E.2d 400 (2007) (addressing whether an employer was estopped from asserting that plaintiff's claim was time barred where employer made specific assurances to the injured employee).

We hold that the Commission erred in applying the *Parsons* presumption in this case.

### III. Medical Causation

[2] Defendants next contend that the Industrial Commission erred in holding that the disc herniation at L4-5 was caused by the 5 March 2007 work accident. We agree.

### A. Requirement of Expert Medical Testimony to Show Medical Causation

In cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. However, when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not sufficiently reliable to qualify as competent evidence on issues of medical causation. The evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation.

*Holley*, 357 N.C. at 232, 581 S.E.2d at 753 (internal alternation, citations, and quotation marks omitted); *See also Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000). "Although expert testimony as to the *possible* cause of a medical condition is admissible if helpful to the [trier of fact], it is insufficient to prove causation, particularly when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." *Holley*, 357 N.C. at 233, 581 S.E.2d at 753 (internal citations and quotation marks omitted).

### B. Findings and Conclusions of the Industrial Commission

7. Plaintiff presented to Matthew Davis, PA-C on March 6, 2007. Plaintiff described the fall the day before and reported that he had a history of prior back injury in 1997. Upon examination of his low back, Plaintiff's range of motion was limited due to pain, and Mr. Davis noted positive Waddell's signs and positive bilateral straight leg raises. Mr. Davis diagnosed multiple

contusions and restricted Plaintiff to no lifting; no repetitive bending; no pushing or pulling; no squatting, kneeling, or crawling; and no climbing

. . . .

18. Based on [Dr. Florian's] review of the April 17, 2007 MRI film vis-à-vis the report from the May 9, 2008 MRI, which he found to be "dramatically different," Dr. Florian testified that he believed that Plaintiff had sustained a new injury between the MRIs. Dr. Florian did note disc bulges at L4-5 and L5-S1 on the April 17, 2007 MRI, but he further stated that the L4-5 disc herniation reported on the May 9, 2008 MRI was an "entirely different finding."

19. As Dr. Allen testified, he could not determine that the May 9, 2008 MRI vis-à-vis the April 17, 2007 MRI showed a new injury. As Dr. Allen testified, it is possible that the L4-5 disc herniation seen on the later MRI represents a progression from the condition seen on the earlier MRI. As Dr. Allen further testified, if Plaintiff never had back problems, then fell through a roof and had the acute onset of low back pain, which slowly got worse over time, then "it is very possible . . . even likely . . . that this could be a progression of the condition." Dr. Allen further noted that, if Plaintiff was working and doing heavy lifting without back trouble prior to his March 5, 2007 fall, that would be a significant factor in determining that the disc herniation found on the May 9, 2008 MRI was a progression from the injury sustained in the fall.

. . . .

21. The Full Commission assigns greater weight to the testimony of Dr. Allen than to that of Dr. Florian. Dr. Allen is an orthopedist, while Dr. Florian is not. Dr. Florian's office seems to have taken on a hostile attitude toward Plaintiff from the beginning of his treatment with them, and it appears that Dr. Florian prematurely released Plaintiff from treatment with a premature finding of maximum medical improvement. Also, Dr. Florian was not asked about the possibility that the later MRI finding represented a progression of the condition seen on the earlier MRI.

The Full Commission went on to conclude that:

Based upon the greater weight of the evidence and medical testimony, particularly assigning greater weight to Dr. Allen's testimony, the Full Commission concludes that Plaintiff's current low back condition is a compensable progression from the injuries he sustained in his March 5, 2007 fall. See *Perez v. American Airlines*, 174 N.C. App. 128 (2005).

### C. Analysis

There was a conflict in the medical causation opinions of Dr. Florian and Dr. Allen. The Commission assigned greater credibility to Dr. Allen's opinion, and held that the disc herniation was a compensable injury. Defendants argue that a careful review of Dr. Allen's testimony reveals that he did not testify as to medical causation with sufficient certainty to meet the requirements of *Holley v. Acts, Inc.*, 357 N.C. 228, 581 S.E.2d 750 (2003), and *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 538 S.E.2d 912 (2000).

Upon direct examination by plaintiff's counsel, Dr. Allen testified as follows:

Q. And did you see anything remarkable about that disc?

A. Yes. It showed a L4/5 disc extrusion on it, which is a herniated disc.

Q. But, last year when he took an MRI, it did not show a herniated disc; is that correct?

A. Correct.

Q. But, it did showed [sic] a bulged disc—

A. It showed a mild bulge.

Q. —at that same location?

A. Yes.

Q. In your opinion, is this a new injury?

A. I would not be able to determine that. So, I can't determine whether somebody got hurt or not. It would have to be based upon the patient's history at that point. So, if somebody was in an accident or a car accident or something like that that— I would say it is a new accident.

If somebody never had back problems before all this, he fell out of a roof or something, had onset—acute onset of back pain that never improved, progressively got worse, it is possible that that disc extrusion could be a progression of the condition we saw on that MRI from the past.

Q.   Well, if Mr. Gross fell out of a ceiling in the early spring of 2007, and he was being treated for his back injury—or for injuries, and he never got back—he never got well, would you say that this was an—a furthering of that injury?

MR. BLACK: Objection.

A.   Well, you're using the word if. I guess is that—if that's accurate, that he never had problems, the only thing that would make me concerned about that was the initial history. He said that—unless it's an error in my medical records, he was saying that he had problems for ten years prior. So, that would be my only concern about that.

But, if that is an error in my medical records, and if he is basically saying he's never had back problems, he fell out of the roof— fell from the roof, or fell through the roof, and had an acute onset of pain just like I described before, and never had problems before this, and the pain just was always there, slowly getting worse over time, it—it is— it is very possible.

And even—likely if that were the scenario, that this could be a progression of the condition.

Q.   Would it clear up any of your doubts if you knew that before this injury—immediately before the alleged injury, Mr. Gross was performing fairly heavy labor?

A.   It wouldn't necessarily clear up doubts, just because many people have to work with even painful backs or without hurt. What I would want to know, what would be—what I would like to know is whether he had any previous back problems, and whether he was having any pains at all, prior to this. So, and I don't know the answer to that.

So, if it was—if it was that he was not having any back problems, he's doing heavy lifting, doing really high level of functioning, of work and labor, and not having any back pains, and doing all those things, I think that would be significant, that he were to fall and get hurt, and—and have this constant back pain that never got better, progressively got worse, to the point of

seeing this most recent MRI, which does show an extension or an extrusion of the disc.

. . . .

Q.  But, you wouldn't say that this is a new injury?

A.  I cannot determine that.

. . . .

Q.  So, unless he describes some sort of traumatic event, there's no way that you could determine that this is a new injury?

A.  Right. If he had some type of traumatic event where he was doing a lot better, you know, or doing better, he has a traumatic event and has an onset of numbness. Because the foot numbness when we—you know, is an issue, you know that could link to that MRI.

So, that—you know, in that situation, it would—that would be important for me to know.

The other thing that could go in his favor is if he never got better, if his back was always killing him, it was causing tremendous pain, and progressively over a period of a year or two getting worse. Then, you know, I think that could go, you know, even in the face of no trauma, could—you know, explain that second MRI.

Upon cross-examination by defendants' counsel, Dr. Allen testified as follows:

Q.  So, the only history noted in either of your medical records— or your practice's medical records in regards to the back would have indicated—and I'm just gonna quote from your record, "Date of onset was ten years ago?"

A.  Yes.

Q.  Without an accurate history, and based on the number of times you've seen Mr. Allen (sic), is it possible to give a causation opinion to any degree of medical certainty?

A.  No.

Q.  You've had a chance to review the CD with the May 9, 2008, MRI report. And is it fair to state that it's a— it's a different presentation than the April 17, 2007?

A.  Yes.

GROSS v. GENE BENNETT CO.

[209 N.C. App. 349 (2011)]

In finding of fact seven, the Commission found that plaintiff had reported a prior back injury in 1997. This finding was consistent with the history plaintiff gave to Dr. Allen on 30 August 2007, where he stated that the date of onset of his back problems was about ten years ago. Each of Dr. Allen's opinions relating to medical causation as to the L4-5 herniated disc were predicated upon plaintiff never having had prior back problems. In fact, at one point Dr. Allen predicated his opinion on the plaintiff's medical history in his records being erroneous. The Commission acknowledged this qualification in Dr. Allen's opinion on two occasions in finding of fact nineteen. However, the Commission chose to ignore this qualification, and hold that the disc herniation was medically related to a compensable injury. Because Dr. Allen's medical causation opinion was expressly qualified by an assumption that plaintiff had no prior back problems, and the Commission found that plaintiff had a prior back problem from 1997, Dr. Allen's medical causation opinion does not rise above the level of possibility or speculation. The evidence does not support the Commission's findings of fact, which in turn do not support its conclusions of law. Plaintiff failed to meet his burden of establishing that the disc herniation injury at L4-5 was caused by a compensable injury. *Holley*, 357 N.C. at 231, 581 S.E.2d at 752 (internal citations and quotation marks omitted).

Because defendants do not challenge the medical causation of plaintiff's injuries between 5 March 2007 and 1 May 2007 (the date plaintiff was released by Dr. Florian to return to full duty), we affirm the Commission's rulings as they pertain to that time period, but reverse its ruling pertaining to the disc herniation injury diagnosed after 1 May 2007.

This matter is remanded to the Commission for entry of a new Opinion and Award consistent with this opinion.

AFFIRMED in part, REVERSED and REMANDED in part.

Judges STEPHENS and HUNTER, JR., Robert N. concur.