***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Homick, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. On May 26, 2009, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Plaintiff's average weekly wage at the time of the alleged injury was $534.98, yielding a compensation rate of $356.67.
4. Defendants acknowledged plaintiff's claim for his cervical injury as "medical only" with the filing of a Form 63 Notice to Employee ofPayment of Compensation without Prejudice or Payment of Medical BenefitsOnly without Prejudice dated December 7, 2009. Defendants have not accepted any injury to other parts of plaintiff's body as a result of the May 26, 2009 incident.
5. Plaintiff received short-term disability benefits from September 8, 2009 through November 30, 2009, from a disability plan that was fully-funded by defendant-employer.
6. Plaintiff filed a Form 33 Request That Claim Be Assigned forHearing, on March 18, 2010. Defendant-employer filed a Form 33RResponse to Request That Claim Be Assigned for Hearing
on April 5, 2010.
7. The parties stipulated to the admissibility of the following documents, which were received into evidence by the Deputy Commissioner:
 • Exhibit 1: Pre-Trial Agreement (5 pages);
 • Exhibit 2: Industrial Commission Forms and Filings and Plaintiff's Medical Records (518 pages); and
 • Exhibit 3: Photos of Accident Vehicle (17 pages).
In addition, the following exhibits were received into evidence: *Page 3 
 • Plaintiff's Exhibit 1: Additional Accident Site Photos
 • Plaintiff's Exhibit 2: Plaintiff's Wage Records
 • Defendants' Exhibit 1: Industrial Commission Form 22 Statement of Days Worked and Earnings of Injured Employee.
8. Plaintiff's issue for determination is as follows:
 • What benefits is plaintiff entitled to receive as a result of his compensable injury by accident on May 26, 2009?
9. Defendants' issues for determination are as follows:
 a. Whether plaintiff's current low back and left hip conditions are related to the May 26, 2009 compensable accident?
 b. If it is determined that plaintiff is entitled to workers' compensation benefits, whether defendants are entitled to an offset for the $3,209.10 in short-term disability benefits that plaintiff received from September 8, 2009 through November 30, 2009 from a disability plan that was fully funded by defendant-employer under N.C. Gen. Stat. § 97-42?
 ***********
Based upon the preponderance of the evidence in view of the entire record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 46 years old, having a date of birth of August 16, 1965. Plaintiff is a high school graduate and he took additional educational classes during his military service and at a community college. Plaintiff served in the U.S. military for approximately 13½ years. *Page 4 
2. Plaintiff suffered a left hip injury in 1996 when he fell from a two-story building while participating in Army training exercises. As a result of the injury, plaintiff underwent surgery including the installation of screws in his left femur.
3. After being released from treatment for the 1996 injury, plaintiff occasionally experienced aching in his left hip, especially during very cold weather. Plaintiff was issued a TENS unit for this complaint which he last used in April of 2004. Other than the issuance of the TENS unit, plaintiff did not require any significant treatment for his left hip condition until following his May 26, 2009 accident.
4. Following his military service, plaintiff's employment was primarily in sales. On January 11, 2007, plaintiff began working for defendant-employer first as a sales representative and later as a pest technician.
5. As a pest technician, plaintiff's duties included meeting new customers, explaining services and conducting inspections. The physical demands of plaintiff's job included walking on uneven terrain, spraying for pests, removing cobwebs and driving up to 45 minutes to an hour at a time.
6. On May 26, 2009, plaintiff was involved in a motor vehicle accident while in the course and scope of his employment. The accident occurred when plaintiff was stopped at a red light and another vehicle struck him from behind.
7. Following the accident, while he was still at the scene, plaintiff reported the incident to defendant-employer by telephoning dispatch. When plaintiff returned to the office, he spoke with Randy Sellar, defendant-employer's Service Manager. Plaintiff then went to the Office Manager's office and lay down on the floor as his back hurt. *Page 5 
8. The same day, plaintiff presented to Dr. Sonya W. Buchanan at Concentra Medical Center at the request of Defendants. Dr. Buchanan noted that plaintiff complained of stiffness in his neck and left shoulder. Dr. Buchanan performed a physical exam and noted no lumbar tenderness, normal lumbar range of motion, normal gait, and negative leg raise test. She diagnosed plaintiff with a shoulder and cervical strain, prescribed Naproxen and the application of ice packs, and released plaintiff to regular activity.
9. On June 3, 2009, plaintiff returned to Concentra where he was seen by internal medicine specialist Dr. Shari Baum who noted that plaintiff's neck symptoms had improved. Dr. Baum released plaintiff from care with no restrictions.
10. Defendants admitted the compensability of a cervical strain as a result of the motor vehicle accident pursuant to the filing of a Form 63 Notice to Employee of Payment of Compensation without Prejudice orPayment of Medical Benefits Only without Prejudice.
11. When plaintiff continued to experience pain in what he thought was his hip area following the accident, he presented to the Veterans' Administration Hospital (VA) in Salisbury, North Carolina on June 17, 2009. At the time, plaintiff thought the pain in his left hip area was due to his 1996 injury sustained in the Army.
12. Plaintiff presented to Dr. James Farley at the VA and asked to be re-enrolled for healthcare. He complained of sharp, intermittent left hip pain that had been present for six months or more which he believed to be the result of his 1996 injury.
13. On August 7, 2009, plaintiff presented to Dr. Mark Jasmine, an orthopedic specialist, through a VA referral. Plaintiff complained of left hip pain, which he again related to his 1996 injury. Dr. Jasmine's note from plaintiff's August 7, 2009 visit states, "Patient appears to have a new process ongoing in his left hip. There do not appear to be complications from his *Page 6 
previous hip surgery." Dr. Jasmine ordered a left hip MRI in order to rule out a stress fracture or other abnormalities and assigned light duty office work.
14. On August 19, 2009, plaintiff underwent a left hip MRI. The MRI failed to characterize plaintiff's left hip due to the screws placed after his 1996 injury, however, no other diagnostic abnormalities were noted and the MRI was considered negative.
15. From January 11, 2007 until May 26, 2009, the date of the accident, plaintiff worked for defendant-employer without experiencing any problems with his hip or back. Only after the May 26, 2009 accident did plaintiff develop symptoms that interfered with his ability to work.
16. On August 31, 2009, plaintiff requested medical leave as he was unable to perform his job while complying with the light duty work restrictions assigned by Dr. Jasmine.
17. From September 8, 2009 through November 30, 2009, plaintiff received short-term disability benefits from a plan that was fully funded by defendant-employer.
18. On September 21, 2009, upon referral from Dr. Farley of the VA, plaintiff presented to orthopedic specialist Dr. W. Stephen Furr for evaluation of complaints which plaintiff described as hip pain. X-rays revealed tightness in the lumbar spine, lumbar stenosis, trochanteric bursitis or inflammation over the lateral side, and small changes in the hip socket itself. Due to plaintiff's sciatica complaints and pain on palpation at his first visit, Dr. Furr recommended a lumbar MRI.
19. Dr. Furr explained that what plaintiff and other laypersons refer to as the "hip" constitutes a generalized area of pain, which, in plaintiff's case, included the low back, flanks, upper leg where the femur enters the pelvis and groin. Dr. Furr opined that the hip pain of which *Page 7 
plaintiff complained was actually related to a back injury, and not his 1996 hip injury, as plaintiff had maintained.
20. On October 22, 2009, plaintiff returned to Dr. Furr who reviewed the results of the lumbar MRI which revealed mild disc disease and spondylosis with annular tears at L4-5 and L5-S1.
21. On November 25, 2009, Dr. Furr attempted unsuccessfully to surgically remove the screws placed during plaintiff's 1996 hip surgery and performed an intra-articular injection to relieve some of plaintiff's symptoms. Thereafter, plaintiff continued to present to Dr. Furr for conservative treatment.
22. When plaintiff presented to Dr. Furr on November 16, 2010, he reported that his physician at the VA encouraged him to begin a gentle exercise program. Dr. Furr approved the additional physical therapy as well as a back brace.
23. Dr. Furr opined to a reasonable degree of medical certainty that plaintiff had preexisting changes in the hip and lumbar spine which were aggravated by his May 26, 2009 injury by accident. This aggravation presented as back pain that radiated to the left buttocks. According to Dr. Furr, plaintiff's low back pain radiated outward so as to encompass the hip area, causing plaintiff to think the pain was related to his earlier hip injury.
24. Dr. Furr opined that plaintiff experienced a minimal exacerbation of his pre-existing hip condition in the May 26, 2009 accident, and that plaintiff's back was the more significant source of his symptoms.
25. Dr. Furr noted that he has seen other patients with injuries such as whiplash, focus on their major injuries to the exclusion of other minor injuries. Thus, Dr. Furr was not surprised *Page 8 
that plaintiff initially complained of neck pain following the May 26, 2009 accident, with the back complaints arising later.
26. Dr. Baum treated plaintiff shortly after the injury from May 26, 2009 through June 3, 2009. Dr. Baum deferred to Dr. Furr, who provided subsequent care to plaintiff, regarding whether there was any causal relationship between plaintiff's back symptoms and the accident. Dr. Baum did opine, however, that the onset of low back or cervical problems would usually appear shortly after an accident and any delay would be atypical.
27. Dr. Farley was unable to testify with any certainty as to whether plaintiff's hip or back symptoms were related to the May 26, 2009 vehicular accident. As with Dr. Baum, Dr. Farley deferred to Dr. Furr regarding the causation of plaintiff's current back symptoms.
28. Defendants did not offer any expert medical testimony to refute the testimony of Dr. Furr that the car accident of May 26, 2009 resulted in the aggravation of plaintiff's pre-existing hip and back conditions for which Dr. Furr and others have been provided treatment.
29. On the issue of whether plaintiff is capable of returning to some type of work, Dr. Furr explained that plaintiff was experiencing enough pain that he (Dr. Furr) required some guidelines as to plaintiff's specific capabilities. If he had to speculate, Dr. Furr opined that plaintiff would be limited to sedentary work for some time. However, he opined that it would be helpful for plaintiff to participate in a Functional Capacity Evaluation (FCE) to specifically determine the level at which plaintiff is capable of working.
30. The Full Commission gives greater weight to the medical opinions of Dr. Furr as he has treated plaintiff more extensively than either Dr. Farley or Dr. Baum. In addition, as an orthopedic specialist, Dr. Furr has greater experience and familiarity with diagnosing back conditions than either Dr. Farley or Dr. Baum, both of whom specialize in internal medicine. *Page 9 
31. Plaintiff continues to experience a great deal of pain and is limited in what activities he can perform as a result of his back injury and aggravation of his pre-existing left hip injury. Specifically, plaintiff has difficulty bending, stooping, sitting and driving for long periods, and walking, especially on uneven terrain.
32. Plaintiff's wife, Virginia Mandujano, testified that plaintiff's pain related to his 1996 injury was not constant prior to the May 26, 2009 accident, and did not prevent plaintiff from working or engaging in daily activities. Ms. Mandujano further testified that, following the May 26, 2009 accident, plaintiff was not capable of performing the same activities and complained of a greater level of pain in his left hip area than he had prior to the work accident.
33. The evidence does not establish that plaintiff has reached maximum medical improvement with respect to all of the conditions which resulted from his May 26, 2009 injury by accident.
34. The Full Commission finds that plaintiff should participate in an FCE as recommended by Dr. Furr in order to determine the level of his work capabilities.
35. Although plaintiff is capable of some light duty work, the Full Commission finds that it would be futile for him to seek employment in light of his pain without first assessing his work restrictions through an FCE. Defendants have not produced evidence that suitable jobs are available and that plaintiff is capable of obtaining a suitable job, taking into account his physical and vocational limitations.
36. Plaintiff received short-term disability benefits through a plan that was fully-funded by defendant-employer from September 8, 2009 through November 30, 2009.
37. The Full Commission finds plaintiff's testimony to be credible concerning the May 26, 2009 accident, his pain, resulting consequences and inability to work. Although there *Page 10 
were some inconsistencies in plaintiff's testimony, the Full Commission finds that they are the result of a lack of thorough understanding on the part of plaintiff rather than any duplicity.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 26, 2009, plaintiff sustained an injury by accident to his cervical spine and aggravations of his pre-existing left hip and lumbar spine conditions arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. In the instant matter, defendants did not accept plaintiff's left hip or lumbar spine conditions as compensable. Therefore, the burden of proving their direct casual relation to the May 26, 2009 injury by accident rests squarely with plaintiff. Gross v. Gene BennettCo., ___ N.C. App. ___, 703 S.E.2d 915 (2011); Holley v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003).
3. North Carolina law requires that where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E. 2d 389 (1980). Additionally, "the entirety of causation evidence" must "meet the reasonable degree of medical certainty standard necessary to establish a causal link." Holley v.ACTS, Inc., 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003);Young v. Hickory Bus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000). "Although medical certainty is not required, an expert's `speculation' is insufficient to establish causation." Holley v. ACTS, Inc.,357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). *Page 11 
4. In the instant case, plaintiff has shown by the greater weight of the medical evidence and his credible testimony concerning his pain before and following his May 26, 2009 accident, that the aggravation of his pre-existing left hip and lumbar conditions is causally related to the compensable injury by accident. N.C. Gen. Stat. § 97-2(6);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000);Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E. 2d 389 (1980).
5. Plaintiff has the burden of proving disability. Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001). In order to meet this burden of proof, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a *Page 12 
suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
6. In the present case plaintiff met his initial burden to show that he was disabled. Although plaintiff is capable of some light duty work, in light of his pain and without first assessing his work restrictions through an FCE, it would be futile for plaintiff to seek employment. Russell v. Lowe's Product Distribution, supra.
Defendants have not shown that suitable jobs were available for plaintiff and that plaintiff was capable of obtaining a suitable job, taking into account plaintiff's physical and vocational limitations.Demery v. Perdue Farms., Inc., supra.
7. As the result of plaintiff's injury by accident and causally related aggravation of his pre-existing left hip and lumbar spine conditions, plaintiff was totally disabled and is entitled to receive temporary total disability compensation at the rate of $356.67 per week commencing on September 8, 2009 and continuing until plaintiff returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29.
8. Defendants are entitled to an offset for short-term disability compensation paid to plaintiff during the period from September 8, 2009 through November 30, 2009 from a disability plan that was fully-funded by defendant-employer. N.C. Gen. Stat. § 97-42.
9. As a direct and proximate result of plaintiff's May 26, 2009 injury by accident and causally related aggravation of his pre-existing left hip and lumbar conditions, plaintiff is entitled to all medical expenses incurred or to be incurred for treatment of his injury by accident and causally related aggravation of his pre-existing left hip and lumbar conditions for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give *Page 13 
relief or tend to lessen plaintiff's period of disability. Plaintiff would benefit from participation in an FCE, as recommended by Dr. Furr. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee hereinafter approved and an offset for the short-term disability compensation paid by defendants from September 8, 2009 through November 30, 2009 from a plan fully funded by defendants, defendants shall pay temporary total disability compensation to plaintiff at the rate of $356.67 per week commencing September 8, 2009 and continuing until further Order of the Industrial Commission.
2. Defendants shall pay all past and future medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident to his cervical and lumbar spine and minor aggravation of his left hip condition for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. This includes an FCE as recommended by Dr. Furr.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff under Paragraph One of this Award is approved for plaintiff's counsel and shall be paid by defendants as follows: twenty-five percent of any compensation which has accrued shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the ___ day of November, 2011. *Page 14 
 S/______________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ TAMMY R. NANCE COMMISSIONER *Page 1