CHAD McLEOD, EMPLOYEE, PLAINTIFF v. NORTH CAROLINA INDUSTRIAL COMMISSION WAL-MART STORES, INC., EMPLOYER, AMERICAN HOME ASSURANCE, CARRIER, (CLAIMS MANAGEMENT, INC., THIRD-PARTY ADMINISTRATOR), DEFENDANTS

No. COA09-1645

(Filed 21 December 2010)

1. Workers' Compensation— Parsons presumption—additional medical treatment—directly related to compensable injury

The Industrial Commission did not err in a workers' compensation case by concluding that defendants had not rebutted the *Parsons* presumption that additional medical treatment was directly related to the compensable injury. A doctor's statements as to "some correlation" did not satisfy defendants' burden of showing that the medical treatment was not directly related to the compensable injury.

**2. Workers' Compensation— suitable work—physical limitations**

The Industrial Commission did not err in a workers' compensation case by concluding that a floor crew/maintenance associate position was unsuitable for plaintiff based on his physical limitations.

**3. Appeal and Error— preservation of issues—failure to cross-appeal**

Although plaintiff contended in his brief in a workers' compensation case that he was entitled to temporary total disability benefits until he returned to a suitable employment position, he failed to properly preserve this issue by cross-appealing.

Appeal by defendants from Opinion and Award entered 13 July 2009 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 June 2010.

*Hardison & Cochran P.L.L.C., by J. Adam Bridwell, for plaintiff-appellee.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Dalton B. Green, for defendant-appellants.*

STROUD, Judge.

Defendants appeal an opinion and award awarding plaintiff benefits and determining that defendant-employer had not provided plaintiff with suitable employment. For the following reasons, we affirm.

I. Background

On 13 July 2009, the Full Commission made the following uncontested findings of fact:

9. Defendants submitted a job description for plaintiff's position, entitled "maintenance associate." The description includes the following essential functions: "reaching . . . below knee level and bending, twisting or stooping"; "constantly lifting, sorting, carrying, and placing merchandise and supplies of varying sizes weighing up to 50 pounds without assistance, and regularly lifting and pushing over 50 pounds with team lifting"; and "constantly utilizing power equipment, such as a floor buffer, pallet jack, and burnisher."

. . . .

11. On July 22, 2006, plaintiff injured his low back while trying to move a stack base that weighed over 100 pounds. He immediately experienced low back pain and pain down his right leg.

12. Plaintiff began treating for this second injury with Dr. James Maultsby's office, which was the provider designated by defendants. On July 22, 2006, Dr. Maultsby's nurse practitioner assessed plaintiff with low back pain with radiation and restricted him to no lifting over five pounds. On July 26, 2006, Dr. Maultsby assessed plaintiff with degenerative joint disease at L5-S1 and a lumbosacral strain and restricted him to limited stooping and bending and no lifting over 10 pounds.

13. Over the next several months, Dr. Maultsby's office gradually lifted the restrictions on plaintiff, and plaintiff gradually worked more hours.

. . . .

15. A lumbar MRI on July 31, 2006 showed a small central disc herniation at L5-S1 with no nerve root compression.

16. Plaintiff went back to Dr. Huffmon on October 5, 2006, complaining of low back pain radiating down his right leg. Dr. Huffmon assessed plaintiff with sacroiliitis and referred him for an injection and chiropractic treatment.

. . . .

19. Plaintiff saw Dr. Maultsby for the last time on January 10, 2007. That day, plaintiff reported that he was better and working his regular shift. Dr. Maultsby attributed any remaining problems to conditions that existed before plaintiff's July 22, 2006 injury, including rheumatoid arthritis, and he released plaintiff from his care.

20. On July 5, 2007, plaintiff presented to Dr. Adam Brown, a neurosurgeon, for a second opinion evaluation on his permanent partial disability rating. Dr. Brown noted that plaintiff was still showing low back and right leg symptoms, and he opined that they "are probably exacerbated by his current job." Dr. Brown further noted that "He would probably be better off in a management or desk type position than he is now and I would suggest this if possible."

21. As of the hearing before the Deputy Commissioner, defendant employer had not offered plaintiff any other job, and he continued working on the floor crew.

22. Plaintiff continued to have low back pain at work, with pain shooting down both legs. He was taking Oxycontin to try to control his pain.

Based on its findings of fact and conclusions of law the Full Commission ordered, *inter alia*:

Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident. Dr. Huffmon is hereby designated as plaintiff's treating physician, and defendants shall authorize and pay for the treatment that Dr. Huffmon recommends for plaintiff's compensable low back condition, including, but not limited to, diagnostic testing, surgery, physical therapy, prescriptions, referrals and mileage.

Defendants appeal.

## II. Standard of Review

Our review of the Commission's opinion and award is limited to determining whether competent evidence of record supports the findings of fact and whether the findings of fact, in turn, support the conclusions of law. If there is any competent evidence supporting the Commission's findings of fact, those findings will not be disturbed on appeal despite evidence to the contrary. However, the Commission's conclusions of law are reviewed *de novo*.

*Graham v. Masonry Reinforcing Corp. of Am.*, 188 N.C. App. 755, 758, 656 S.E.2d 676, 679 (2008) (citation omitted).

## III. Benefits Awarded

[1] On or about 15 August 2006, defendant-employer signed a Form 60 regarding plaintiff's 22 July 2006 "injury by accident[.]" Pursuant to *Perez v. Am. Airlines/AMR Corp.*:

[a] party seeking additional medical compensation pursuant to N.C. Gen. Stat. § 97-25 must establish that the treatment is directly related to the compensable injury. Where a plaintiff's injury has been proven to be compensable, there is a presumption that the additional medical treatment is directly related to the compensable injury. The employer may rebut the presumption

with evidence that the medical treatment is not directly related to the compensable injury.

> The employer's filing of a Form 60 is an admission of compensability. Thereafter, the employer's payment of compensation pursuant to the Form 60 is an award of the Commission on the issue of compensability of the injury. As the payment of compensation pursuant to a Form 60 amounts to a determination of compensability, we conclude that the *Parsons* presumption applies in this context. . . . It follows logically that because payments made pursuant to a Form 60 are an admission of compensability under the Workers' Compensation Act, these payments are the equivalent of an employee's proof that the injury is compensable. As compensability has been determined by the employer's Form 60 payments, the *Parsons* presumption applies to shift the burden to the employer.

174 N.C. App. 128, 135-36, 620 S.E.2d 288, 292-93 (2005) (quotation marks omitted), *disc. review allowed*, 360 N.C. 364, 630 S.E.2d 186, *review improvidently allowed*, 360 N.C. 587, 634 S.E.2d 887 (2006). As defendants have filed a Form 60, the burden was upon them to show "that the medical treatment is not directly related to the compensable injury." *Id.* at 135, 620 S.E.2d at 292.

Defendants argue that "Plaintiff's degenerative low back condition is the result of Plaintiff's pre-existing degenerative disc disease, and is not related to the long-resolved low back muscular strain work injury of 22 July 2006." Defendants direct our attention to the testimony of Dr. Adam Brown and Dr. James Maultsby as evidence "that the medical treatment is not directly related to the compensable injury." *Id.*

Dr. Brown testified that there was "some correlation" between plaintiff's degenerative disk disease and plaintiff's "pain . . . [and] limitation of activity[.]" However, Dr. Brown's statements as to "some correlation" do not satisfy defendants' burden of showing "that the medical treatment is not directly related to the compensable injury." *Id.*

Dr. Maultsby testified that he felt plaintiff's "back strain had resolved. I felt he had pain in extremity from a preexisting problem at that time." Dr. Maultsby was asked, "What preexisting condition did you feel was causing his pain?," to which he replied:

> Well, of the arthritis that he was being treated for that he was taking Methotrexate for his arthritis. I felt that he may have had

some preexisting scarring. I don't have his complete record from Dr. Huffmon as far as the things he was treating him for, but I think it was some kind of neurological problem within the nerve, not in the musculoskeletal system, the ligaments and things. He was—again, he was seeing at least two or three different doctors for various conditions, even before he had his injury, and I thought some of these other things were contributing to his pain in his extremity at that time.

Even assuming *arguendo* that Dr. Maultsby's testimony regarding plaintiff's preexisting condition, if found to be credible and given sufficient weight, was enough to rebut the *Parsons* presumption, *see id.* at 135-36, 620 S.E.2d at 292-93, "[t]he [F]ull Commission is the sole judge of the weight and credibility of the evidence. This Court is not at liberty to reweigh the evidence and to set aside the findings simply because other conclusions might have been reached." *Roberts v. Century Contr'rs, Inc.*, 162 N.C. App. 688, 691, 592 S.E.2d 215, 218 (2004) (citations, quotation marks, ellipses, and brackets omitted). Obviously, the Full Commission did not give much weight to Dr. Maultsby's testimony as they noted that he was originally plaintiff's treating physician and found in finding of fact 19 that "Dr. Maultsby attributed any remaining problems to conditions that existed before plaintiff's July 22, 2006 injury, including rheumatoid arthritis, and he released plaintiff from his care[,]" but went on to note that Dr. Brown later found "plaintiff was still showing low back and right leg symptoms" and ultimately awarded plaintiff further medical expenses as directed by Dr. Huffmon, not Dr. Maultsby. We conclude that the Full Commission did not err in determining that defendants had not rebutted the *Parsons* presumption, *see Perez* at 135-36, 620 S.E.2d at 292-93, and therefore defendant was entitled to further compensation. This argument is overruled.

## IV. Suitable Employment

[2] Defendants also argue that "the Full Commission erred in concluding the floor crew/maintenance associate position is unsuitable." (Original in all caps.) "Suitable employment is defined as any job that a claimant is capable of performing considering his age, education, physical limitations, vocational skills and experience. The burden is on the employer to show that an employee refused suitable employment." *Munns v. Precision Franchising, Inc.*, 196 N.C. App. 315; 317-18, 674 S.E.2d 430, 433 (2009) (citation and quotation marks omitted).

McLEOD v. WAL-MART STORES, INC.

[208 N.C. App. 555 (2010)]

The Full Commission found that "[a]ll three physicians, Drs. Maultsby, Huffmon and Brown, agreed that working outside Dr. Huffmon's restrictions and/or doing heavy duty work would worsen plaintiff's pain." At Dr. Maultsby's deposition he was asked:

> Let me ask you this real quick, if I could. What is the—what's the danger, I guess, negative consequence of somebody having a lumbosacral strain, and then, you know, continuing to work heavy duty on it? I mean, what is the like heavy duty, I mean, lifting hundreds of pounds and stuff like that, what could be the negative consequences or outcomes of that?

to which Dr. Maultsby responded, "It will recur, it will recur." Dr. Huffmon testified that if plaintiff was working beyond the work restrictions he placed on him, which included "pushing or pulling up to 40 pounds [and] avoid[ing] bending or stooping," plaintiff would be at risk for increased pain. Dr. Brown testified that plaintiff "would be better off in a management or desk type position . . . like a light-duty position[.]" Thus, there is competent evidence to support the Full Commission's finding that "[a]ll three physicians, Drs. Maultsby, Huffmon and Brown, agreed that working outside Dr. Huffmon's restrictions and/or doing heavy duty work would worsen plaintiff's pain."

Defendants do not challenge the description of plaintiff's job as a "maintenance associate," and the Full Commission in uncontested finding of fact 9 noted that the job required, *inter alia*:

> reaching . . . below knee level and bending, twisting or stooping; constantly lifting, sorting, carrying, and placing merchandise and supplies of varying sizes weighing up to 50 pounds without assistance, and regularly lifting and pushing over 50 pounds with team lifting; and constantly utilizing power equipment, such as a floor buffer, pallet jack, and burnisher.

(Quotation marks omitted.); *see generally Davis v. Hospice & Palliative Care*, —— N.C. App. ——, 692 S.E.2d 631, 638 (2010) ("Unchallenged findings of fact by the Commission are binding on appeal."). Accordingly, the tasks plaintiff was performing as a "maintenance associate" were outside of Dr. Huffmon's restrictions, and as described by the doctors' testimonies also qualify as "heavy duty." Thus, plaintiff's job "would worsen plaintiff's pain." Therefore, we conclude that the Full Commission did not err in concluding that plaintiff's job was not suitable employment as plaintiff is not "capable of performing [it] considering his . . . physical limitations[.]" *Munnsat*

317, 674 S.E.2d at 433. Defendant-employer has failed to meet its burden of "show[ing] that . . . [plaintiff] refused suitable employment." *Id.* at 318, 674 S.E.2d at 433. This argument is overruled.

## V. Temporary Total Disability

**[3]** Plaintiff also notes in his brief that he "is entitled to temporary total disability benefits until he returns to a suitable employment position[.]" (Original in all caps.) However, plaintiff did not cross-appeal this issue, and thus we will not address it. *See generally Harllee v. Harllee,* 151 N.C. App. 40, 51, 565 S.E.2d 678, 684 (2002) ("[T]he proper procedure for presenting alleged errors that purport to show that the judgment was erroneously entered and that an altogether different kind of judgment should have been entered is a cross-appeal."); *see also* N.C.R. App. P. 28(c) (allowing for appellee to raise additional questions without filing a notice of appeal or without assignments of error in certain situations not applicable to the present case).

## VI. Conclusion

We conclude that the Full Commission did not err in awarding plaintiff benefits and in concluding that defendant had not provided plaintiff with suitable employment. Therefore, we affirm.

AFFIRMED.

Judges McGEE and ERVIN concur.