IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-296

Filed 02 May 2023

NORTH CAROLINA INDUSTRIAL COMMISSION, I.C. No. W94420

ROBERT BREWER, Employee, Plaintiff,

v.

RENT-A-CENTER, Employer, TRAVELERS INSURANCE CO. (SEDGWICK CLAIMS SERVICES, Third-Party Administrators), Carrier, Defendants.

Appeal by Defendants from an Opinion and Award entered 9 November 2021 by the North Carolina Industrial Commission. Heard in the Court of Appeals 5 October 2022.

> *Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, Neil P. Andrews, Linda Stephens, and Brennan Cumalander, for Defendant-Appellants.*
>
> *Cardinal Law Partners, by Kristin P. Henriksen, for Plaintiff-Appellee.*

WOOD, Judge.

This appeal is from an Opinion and Award of the Industrial Commission concluding that Defendants must continue to pay for a former employee's medical expenses related to a compensable injury. At issue is whether the Defendants produced competent evidence sufficient to rebut the *Parsons* presumption, which shifts from an employee to an employer the burden of proof for causation of an injury. After careful review, we affirm the Opinion and Award of the Industrial Commission.

## I. Background

On 1 July 2010, Robert Brewer ("Plaintiff") fell from a stack of furniture boxes while working at Rent-A-Center. He injured, among other body parts, his neck, back, spleen, and kidneys. As a store manager for Rent-A-Center, Plaintiff was inventorying items in the company's stockroom when he fell.

Rent-A-Center filed an Industrial Commission Form 63 on 23 July 2010, listing injuries to Plaintiff's neck, back, spleen, sternum, and kidneys. Through this form, Rent-A-Center agreed to pay for Plaintiff's initial treatment, subject to contest within a prescribed period. Rent-A-Center never contested payment for the initial or continued treatment.

Over the next decade, Plaintiff visited a host of medical professionals to treat his neck and back pain. Beginning with an initial emergency room visit to Frye Regional Medical Center on the day of his fall, Plaintiff followed up with his primary care physician Dr. W. Lee Young within a week. Tests did not show that Plaintiff had fractured anything in his back, but his doctor prescribed medication to ease his pain. On 22 October 2010, Plaintiff began orthopedic treatment with Dr. Russell Gilchrist, a physiatrist, who ordered an MRI. The MRI "revealed moderate degenerative changes at C5-6, resulting in moderate canal stenosis and some flattening of the spinal cord, as well as mild flattening of the spinal cord at C4-5 and C6-7." It also showed "mild multilevel degenerative lumbar spondylosis without significant central canal or neural foraminal stenosis at any level." Plaintiff received

a "cervical spine epidural injection" from Dr. Gilchrist without experiencing much relief from his symptoms. Subsequently, Dr. Gilchrist referred Plaintiff to a neurologist and recommended a functional capacity evaluation, but his primary care physician was unable to provide medical clearance for the evaluation due to Plaintiff's prior history of stroke.

On 3 November 2011, Plaintiff sought a second opinion from Dr. John Welshofer, a pain management physician, who ordered more MRIs of Plaintiff's cervical, thoracic, and lumbar spine. These MRIs revealed mild degenerative disc disease, several bulging discs, a herniated disc, and stenosis, among other findings. During 2012, Dr. Gilchrist continued to treat Plaintiff with pain medications.

On 27 August 2012, Plaintiff underwent an evaluation with Dr. David Jones, an expert, board-certified neurosurgeon. Dr. Jones found Plaintiff's cervical spine MRI to be "fairly impressive" but also believed Plaintiff to be "overly dramatic" and hesitated to recommend further treatments because he was unable to "figure out at this point why [Plaintiff] moves the way he does." He reported he would be willing to see Plaintiff again after repeat diagnostic studies and a psychological evaluation. Several months later, another MRI showed worsening disc hemorrhaging. On 2 July 2013, Dr. Jones reevaluated Plaintiff and his updated cervical spine MRI. Dr. Jones found Plaintiff to be "less dramatic" and more reasonable and recommended Plaintiff undergo anterior cervical discectomy and fusion ("ACDF") surgery. However, Dr. Gilchrist recommended diagnostic testing before having the recommended surgery.

Plaintiff then received a radiofrequency ablation procedure on 19 December 2013 and sacroiliac joint injections while continuing his pain medication regimen.

On 10 January 2014, Plaintiff consulted with Dr. Ralph Maxy, an orthopedic surgeon who specializes in spine surgery and practices, for a second opinion on the necessity of an ACDF surgery. Dr. Maxy agreed with the recommendation for surgery and performed the surgery on 27 January 2014. Plaintiff was prescribed pain medication and limited to light duty or no duty. After the surgery, another lumbar spine MRI was performed on 30 April 2014 and revealed minimal degenerative changes and was essentially unchanged from Plaintiff's 2010 lumbar spine MRI. Dr. Maxy released Plaintiff at a maximum medical improvement for his cervical spine and assigned a ten-percent permanent partial impairment rating on 16 May 2014. Although he assigned a zero-percent rating for Plaintiff's lumbar spine, he noted Plaintiff would require long-term pain management to wean off his medications over time. Dr. Maxy assigned permanent restrictions of "no lifting more than five pounds, avoidance of repetitive bending, twisting, or stooping, and standing or sitting as tolerated."

On 30 July 2014, Dr. Mark Tiffany, a pain management specialist, took over Plaintiff's care from Dr. Maxy and began treating Plaintiff "with opioids, muscle relaxers, and sleep aids, as well as injections and neuropathic cream." However, Plaintiff struggled with constipation and diarrhea that Dr. Tiffany attributed to the medications. During the course of treatment, Dr. Tiffany also diagnosed Plaintiff

with fibromyalgia and found that Plaintiff's "work injury was a significant contributing factor in the development of the condition." Dr. Tiffany continued to treat Plaintiff through 2018. In 2019, Dr. Troy Gingerich, a board-certified pain management specialist and expert in interventional pain medication, took over Plaintiff's treatment because Dr. Tiffany had moved to a different practice.

Dr. Gingerich continued to treat Plaintiff's condition with injections and pain medication and ordered a cervical spine CT scan. The CT scan was conducted on 3 July 2019 and did not reveal any new problems. Thereafter, Dr. Gingerich recommended Plaintiff undergo a spinal cord stimulator trial for his lumbar spine and lower extremity pain in the hope that it would treat Plaintiff's pain and eventually allow him to reduce his pain medication. Consistent with its agreement, Rent-A-Center continued to pay for all of Plaintiff's treatments. However, in 2019, Rent-A-Center filed an Industrial Commission Form 33 requesting a hearing to review "the necessity of Plaintiff's current prescription medication regimen" and a "determination to stop indemnity benefits" for Plaintiff's treatment.

The case was initially heard on 9 December 2020 before Deputy Commissioner Mary Claire Brown. Rent-A-Center and their insurance provider Travelers Insurance Company (together "Defendants") presented the testimony of several doctors they had retained who had reviewed Plaintiff's incident and medical history.

The Deputy Commissioner ordered Defendants to authorize medical treatment for Plaintiff's cervical pain and to continue paying weekly, temporary, and total

disability benefits to Plaintiff. The Deputy Commissioner allowed Defendants to discontinue payment of medical compensation for Plaintiff's lower back, legs, coccyx, headaches, myofascial pain, fibromyalgia, and "other conditions outside the cervical spine." The Deputy Commissioner also ordered that Defendants not be required to authorize attendant care services, Plaintiff's Lyrica prescription, or the spinal cord stimulator. The Opinion and Award also denied Plaintiff's request for attorney's fees and ordered him to submit to an independent medical examination with Dr. Gualtieri. Both Plaintiff and Defendants appealed the decision to the Full Commission.

The Full Commission held a hearing on 13 May 2021. The Commission heard testimony from Dr. Suzanne Novak, a board-certified anesthesiologist and pharmacy school professor who is not licensed in North Carolina, and Dr. George Young, a board-certified expert in diagnostic radiology licensed in the state of North Carolina. In its Opinion and Award, the Commission stated the following concerning Dr. Young's testimony:

> In the present matter, Defendants have failed to rebut the *Parsons* presumption. To the extent Dr. Young offered opinions regarding causation, those opinions are all based upon his conclusion that Plaintiff's fall on July 1, 2010 did not result in an injury to Plaintiff's cervical and/or lumbar spine – in sum, he testified that because Plaintiff sustained no injuries (either new injuries or an aggravation of preexisting injuries) on July 1, 2010, any treatment Plaintiff is now receiving for his cervical and/or lumbar spine is unrelated to his fall on July 1, 2010. Such testimony is insufficient to rebut the *Parsons* presumption where the existence of injuries to Plaintiff's cervical and lumbar spine has been established by an Award of the

Commission in the form of a never-denied Form 63. The entire premise of Dr. Young's opinion (that Plaintiff never had any injuries as a result of his July 1, 2010 fall) stands in direct contradiction to the admission made by Defendants and the award of the Commission establishing that Plaintiff sustained injuries to his cervical and lumbar spine when he fell on July 1, 2010. Where an expert's opinion is based upon facts not supported by the record, it is merely speculation and therefore not competent to prove causation. *Seay v. Wal-Mart, Inc.*, 180 N.C. App. 432, 436-37, 637 S.E.2d 299, 302 (2006). Accordingly, Dr. Young's testimony is insufficient to rebut the *Parsons* presumption afforded Plaintiff. *Young* 353 N.C. at 230, 538 S.E.2d at 915.

The Commission held similarly for Dr. Novak's testimony before concluding, "As Defendants have failed to present competent expert medical testimony to rebut the *Parsons* presumption, Plaintiff is entitled to payment of medical expenses . . . ."

In its Opinion and Award issued on 9 November 2021, the Commission ordered Defendants to continue authorizing all medical expenses related to Plaintiff's cervical and lumbar spine conditions and to continue paying temporary total disability compensation. The Commission denied Plaintiff's claims for attendant care, for attorney's fees pursuant to Section 97-88.1 of our General Statutes, and for medical treatment for myofascial pain, headaches, and fibromyalgia. The Commission further ordered Plaintiff to submit to the independent medical examination with Dr. Gualtieri. Defendants appealed the Commission's Opinion and Award pursuant to Section 7A-29(a).

## II.   Standard of Review

7

"The standard of review in workers' compensation cases has been firmly established by the General Assembly and by numerous decisions of" our Supreme Court. *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008), *reh'g denied*, 363 N.C. 260, 676 S.E.2d 472 (2009).

> Under the Workers' Compensation Act, the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. Therefore, on appeal from an award of the Industrial Commission, review is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law.

*Id.* (citations and internal quotation marks omitted). "[A]n award of the Commission upon such review, as provided in G.S. 97-85, shall be conclusive and binding as to all questions of fact." N.C. Gen. Stat. § 97-86 (2022).

We review the Commission's conclusions of law *de novo*. *Graham v. Masonry Reinforcing Corp. of Am.*, 188 N.C. App. 755, 758, 656 S.E.2d 676, 679 (2008). "Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Reese v. Mecklenburg Cnty.*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 38 (2009) (citations omitted).

### III.   Discussion

Defendants first argue that the Commission erred when it held that Defendants did not overcome their burden under the *Parsons* presumption.

Generally, "[a] party seeking additional medical compensation pursuant to N.C. Gen. Stat. § 97-25 must establish that the treatment is 'directly related' to the

compensable injury." *Perez v. Am. Airlines/AMR Corp.*, 174 N.C. App. 128, 135, 620 S.E.2d 288, 292 (2005). However, under the *Parsons* presumption, employee-plaintiffs who receive a favorable opinion and award from the Industrial Commission are afforded the rebuttable "presumption that additional medical treatment is causally related to the original injury." *Gross v. Gene Bennett Co.*, 209 N.C. App. 349, 351, 703 S.E.2d 915, 917 (2011) (citing *Parsons v. Pantry, Inc.* 126 N.C. App. 540, 542, 485 S.E.2d 867, 869 (1997)). "To require [a] plaintiff to re-prove causation each time she seeks treatment for the very injury that the Commission has previously determined to be the result of a compensable accident is unjust and violates our duty to interpret the [Workers' Compensation] Act in favor of injured employees." *Parsons*, 126 N.C. App. at 542, 485 S.E.2d at 869. Employer-defendants bear the burden "to prove the original finding of compensable injury is unrelated to [a plaintiff's] present discomfort." *Id.* The *Parsons* presumption extends to cases involving an uncontested Form 63 as if the plaintiff had received a favorable Opinion and Award from the Full Commission. *Gonzalez v. Tidy Maids, Inc.*, 239 N.C. App. 469, 476, 768 S.E.2d 886, 892 (2015). If the employer successfully rebuts the presumption, the burden to prove that the medical treatment is directly related to the compensable injury shifts back to the employee. *Miller v. Mission Hosp., Inc.*, 234 N.C. App. 514, 519, 760 S.E.2d 31, 35 (2014).

To overcome the *Parsons* presumption, a defendant must present competent evidence that the original, compensable injury is not causally related to a plaintiff's

current medical treatment. *Seay v. Wal-Mart Stores, Inc.*, 180 N.C. App. 432, 436, 637 S.E.2d 299, 302 (2006). Whether evidence is competent is a question of law that this Court reviews *de novo*. *Haponski v. Constructor's Inc.*, 87 N.C. App. 95, 97-98, 360 S.E.2d 109, 110 (1987).

Unlike a determination of competency, "[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965). This Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight." *Id.* at 434, 144 S.E.2d at 274. It is well established that "[t]he findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence." *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977). "The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson*, 265 N.C. at 434, 144 S.E.2d at 274. "The findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." *Jones v. Myrtle Desk Co.*, 264 N.C. 401, 402, 141 S.E.2d 632, 632 (1965).

Defendants contend that any expert evidence is sufficiently competent to rebut the *Parsons* presumption if that evidence supports, in any way, a theory that current medical treatment is not related to an original, compensable condition. This argument ignores our more nuanced jurisprudence of competent evidence.

10

"Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *City of Asheville v. Aly*, 233 N.C. App. 620, 625, 757 S.E.2d 494, 499 (2014). In Workers' Compensation cases, "[t]he quantum and quality of the evidence required to establish *prima facie* the causal relationship will of course vary with the complexity of the injury itself." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). For instance, "[s]peculative and general lay opinions and bare or vague assertions do not constitute competent evidence." *Innovative 55, LLC v. Robeson Cnty.*, 253 N.C. App. 714, 723, 801 S.E.2d 671, 678 (2017). Even with expert testimony, " 'could' or 'might' expert testimony [is] insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000). Whether evidence is sufficiently competent may be a confusing question as "[t]reatises on evidence note that the standards for admissibility of expert opinion testimony have been confused with the standards for sufficiency of such testimony." *Holley v. ACTS, Inc.*, 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003).

Here, Rent-A-Center filed a Form 63, specifying injuries to Plaintiff's neck and back, among other body parts, and did not contest payment for continued medical treatment. Thus, Defendants were required to overcome the *Parsons* presumption before the Commission could consider ceasing Defendants' payment obligations; the burden rested with Defendants to provide the Commission with competent evidence

11

that Plaintiff's current treatment was unrelated to his compensable injury. In an attempt to do this, Defendants enlisted Doctors Young and Novak who testified as expert witnesses that they did not believe Plaintiff's continued medical treatment was related to his original injury. *See Click*, 300 N.C. at 167, 265 S.E.2d at 391 ("[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.").

The Commission determined that Defendants did not produce competent evidence sufficient to overcome the *Parsons* presumption. It relied principally upon *Seay v. Wal-Mart Stores, Inc.* for this conclusion. In that case, the testimony of a medical expert was not deemed competent because it was "based on speculation and conjecture." *Seay*, 180 N.C. App. at 436-37, 637 S.E.2d at 302. Specifically, the directing attorney asked a testifying doctor a hypothetical question about the employee's injury. "[T]he response elicited by plaintiff's hypothetical question required Dr. Davidson to assume the truth of facts that were not supported by the record. An expert's opinion that was solicited through the assumption of facts unsupported by the record is entirely based on conjecture." *Id.* at 437, 637 S.E.2d at 303 (citing *Thacker v. City of Winston-Salem*, 125 N.C. App. 671, 675, 482 S.E.2d 20, 23 (1997)). Expert testimony as to the possible cause of a medical condition is admissible if helpful but "is insufficient to prove causation, particularly 'when there

is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation.' " *Holley*, 357 N.C. at 233, 581 S.E.2d at 753 (quoting *Young*, 353 N.C. at 233, 538 S.E.2d at 916).

The Commission's unchallenged findings of fact regarding Dr. Novak's testimony are as follows:

> 38. Defendants retained Suzanne Novak, Ph.D., M.D., a board-certified anesthesiologist and pharmacy school professor who is not licensed in North Carolina, to perform a records review of Plaintiff's care and to offer an opinion about his conditions and treatment. Dr. Novak does not treat patients clinically, is not board certified in pain management, did not examine Plaintiff, did not provide any treatment to Plaintiff, and has never met him. Based upon her records review, Dr. Novak concluded that Plaintiff's current complaints and his current need for treatment are unrelated to his original July 1, 2010 work-related fall. She ultimately opined that "the claimant has some sort of autoimmune disease" unrelated to his July 1, 2010 fall at work that is the cause of Plaintiff's current symptomology, but she was unable to identify the disease, unable to say with any certainty that Plaintiff has any specific disease, and did not explain how she could definitively say Plaintiff's symptoms are unrelated to his compensable work injuries if she cannot identify the autoimmune disease. She testified that there is no clear explanation for Plaintiff's low back or lower extremity symptoms and these symptoms are not related to his work injury. When asked the basis of her opinion regarding Plaintiff's lumbar spine and lower extremity condition, Dr. Novak testified:
>
> > The number one basis is that he doesn't have imaging studies to support that. His – his imaging studies are basically negative and have been since the very beginning. What he does have, on the other hand, is he has possible lupus, a probably – probable autoimmune disease

13

of some type. He has a sensory polyneuropathy that could be extremely painful and could be causing his weakness, numbness, in all – in all probability is causing his weakness, numbness, falls, if that's the only reason he's having them. And all of this is related to whatever disease – diseases that he has that are not work related and are extremely significant.

39. Dr. Novak testified that Plaintiff "has no spinal injury whatsoever," that his fall did not aggravate any preexisting condition, and that Plaintiff's coccyx pain, myofascial pain, fibromyalgia, headaches, and chronic pain syndrome are unrelated to his July 2010 fall at work. She noted that long-term opioid use was not helping his symptoms and that he should be weaned off of them. She explained Plaintiff "doesn't need to be on opioids at all" or have further injections, further ablation procedures, or occipital nerve blocks for his injuries. She opined that Plaintiff is not a candidate for a spinal cord stimulator because it will not treat Plaintiff's cervical spine condition, because he has a history of skin break downs, and because, in her opinion, he has a yet-undiagnosed medical condition that could impact the procedure. Ultimately, Dr. Novak testified that "any other treatment" Plaintiff is receiving is "wholly unrelated to his July 2010 work accident," including prescription medications. She explained that because Cyclobenzaprine is intended to treat acute muscle spasms and is contraindicated for anyone with a heart condition, that it should not be prescribed for Plaintiff. Dr. Novak testified that Plaintiff's amitriptyline and Lyrica prescriptions are also unrelated to his July 2010 injuries. She further opined that it was not reasonable and not medically necessary to continue to prescribe Plaintiff opioids long-term due to the associated risks. When asked if she would defer to Plaintiff's treating physicians, Dr. Novak indicated that she would not. Dr. Novak expressed all of her opinions to a reasonable degree of medical certainty.

The Commission's unchallenged findings of fact regarding Dr. Young's

testimony are as follows:

40. Defendants also retained George Young, M.D., a board-certified expert in diagnostic radiology licensed in the state of North Carolina, to review Plaintiff's medical records and prior imaging studies and render an opinion regarding the cause of Plaintiff's current condition. He expressed all of his opinions to a reasonable degree of medical certainty. Dr. Young did not examine or evaluate Plaintiff in person and has never spoken to him. Based upon his review of the November 19, 2010 MRI of Plaintiff's cervical spine, Dr. Young concluded that although Plaintiff had degenerative disc disease, disc desiccation, disc bulging, foraminal stenosis, and cord flattening, he did not have cord compression and there was no indication of an acute injury to Plaintiff's cervical spine at that time. He explained that all of the findings present on the November 19, 2010 MRI were chronic, long-standing, and unrelated to Plaintiff's July 1, 2010 fall and that there was no evidence of aggravation shown on the MRI. With regard to Plaintiff's lumbar spine MRI, also from November 19, 2010, Dr. Young testified that Plaintiff had degenerative changes but no acute injury or abnormalities, and no evidence of any exacerbation of a preexisting condition. When asked about Plaintiff's February 4, 2011 thoracic spine MRI, Dr. Young opined there were no acute abnormalities and no aggravation of a preexisting condition attributable to his July 1, 2010 fall. Dr. Young also reviewed Plaintiff's April 30, 2014 lumbar spine MRI and indicated that Plaintiff's lumbar spine was stable and unchanged from 2010. Based upon his conclusion that Plaintiff's July 1, 2010 fall was not the cause of any injury or aggravation to Plaintiff's cervical, thoracic, or lumbar spine, Dr. Young offered the opinion that he is unable to explain the cause of Plaintiff's chronic pain and is unable to relate Plaintiff's current symptoms to the original injury based on the MRIs he reviewed. When asked if Plaintiff's current neck and back pain is causally related to the July 2010 work event, Dr. Young responded "not on the basis of the MRI scan."

41. Dr. Young agreed with Dr. Novak's opinion

regarding the cause of Plaintiff's current condition and deferred to her regarding the appropriateness of Plaintiff's medication. When questioned about the basis of his opinions, he agreed that his opinion regarding causation is based solely on his review of Plaintiff's MRIs. He further agreed that a patient can have postsurgical pain. On cross examination, Dr. Young indicated that if Dr. Maxy had reviewed Plaintiff's MRIs, he would defer to Dr. Maxy regarding the cause of Plaintiff's current complaints and would also defer to Plaintiff's pain management physician regarding the need for pain medications. He further agreed that it is possible to have aggravation without signal abnormalities on an MRI. Dr. Young ultimately agreed he was not offering an opinion regarding whether Plaintiff's current need for pain medications is related to his original injury, and that imaging studies are just one part of determining a patient's diagnosis.

Both Doctors Novak and Young, without ever having examined or treated Plaintiff, reviewed Plaintiff's medical history and determined that his current ailments were not the result of the previous, compensable injury. The Commission found that the experts essentially denied the existence of an original, compensable injury and held that such a conclusion was "merely speculation" and, therefore, not competent because it "stands in direct contradiction to the admission made by Defendants and the award of the Commission establishing that Plaintiff sustained injuries . . . when he fell on July 1, 2010." Therefore, the Commission did not believe that a reasonable mind would find these experts' testimonies adequate to overcome the *Parsons* presumption in light of the additional evidence showing that their insufficient clinical experience and certifications and lack of access to Plaintiff resulted in mere guesswork. Additionally, Dr. Young stated he would defer a

causation determination to Dr. Maxy, one of Plaintiff's treating doctors. Likewise, we agree and hold that the testimonies of Doctors Young and Novack were speculative and not sufficiently competent to overcome the *Parsons* presumption.

Further, although not explicitly stated in its findings, it is clear the Commission gave no weight to the testimony of Defendants' experts. This credibility determination, unlike the evidentiary determination, is wholly within the discretion of the Commission. *Anderson*, 265 N.C. at 433-34, 144 S.E.2d at 274. As this Court held in *Gonzalez v. Tidy Maids, Inc.*, "even assuming without deciding that this testimony could adequately show that plaintiff's current symptoms are unrelated to her original compensable back injuries, the Commission discredited this testimony, as it was entitled to do." 239 N.C. App. 469, 477, 768, S.E.2d 886, 893 (2015). Similarly, we held in *McLeod v. Wal-Mart Stores, Inc.* that "[e]ven assuming *arguendo* that [the expert] testimony . . . was enough to rebut the *Parsons* presumption, . . . '[t]he [F]ull Commission is the sole judge of the weight and credibility of the evidence.'" 208 N.C. App. 555, 560, 703 S.E.2d 471, 475 (2010) (quoting *Roberts v. Century Contractors, Inc.*, 162 N.C. App. 688, 691, 592 S.E.2d 215, 218 (2004)). The weight given expert evidence is a duty for the Commission to decide, not this Court.

Contrary to its reception of Doctors Young and Novak, the Commission found Plaintiff's treating physicians persuasive. It found Dr. Maxy "noted that Plaintiff had objective pathology in his cervical spine related to his original injury and resulting surgery." Dr. Maxy is an orthopedic surgeon specializing in spine surgery and

17

practices in North Carolina. He performed spinal surgery on Plaintiff and "testified that he considered himself in a better position, as a treating physician, to render an opinion about Plaintiff's condition."

Dr. Tiffany, another treating physician, took over Plaintiff's care from Dr. Maxy. Dr. Tiffany was the pain management physician working in the same clinic and prescribed Plaintiff with medication and performed spinal injections. The Commission specifically quoted Dr. Tiffany in saying that while "there is no way to be certain that these injuries are related to his fall, there's also no way to be certain they weren't." He noted "that the opinion of a diagnostic radiologist is not as helpful as that of a treating physician like Dr. Maxy." The Commission also noted specifically that he "believes that a clinician who is the treating physician is better equipped to determine the appropriate medication for a patient than a records review physician."

The Commission also noted Dr. Gingerich's qualifications and testimony. Dr. Gingerich is a board-certified pain management specialist and an expert in interventional pain medication. As with the rest of Plaintiff's doctors, he practices in this state and had hands-on experience with Plaintiff. Specifically, he treated, and continues to treat, Plaintiff with injections and pain medications, reviewed his CT scan, and recommended further treatment. Dr. Gingerich testified as to causation of Plaintiff's current pain complaints that, "based on the history that he gave me, it makes it seem like it was related to the [July 1, 2010] injury." Dr. Gingerich further testified that Plaintiff is "more than likely" incapable of gainful employment.

After considering the entire record, including the testimonies of the experts, the Commission found that Plaintiff's ongoing care was "reasonably necessary to effect a cure or provide relief" "[b]ased upon the preponderance of the evidence in view of the entire record." It is clear from the Commission's findings that it found Plaintiff's physicians more persuasive than Defendant's experts.

Because we hold the Commission considered and properly weighed the testimonies of Defendants' medical experts before reaching the conclusion that Defendants did not overcome the *Parsons* presumption, we need not address Defendants' remaining arguments.

## IV. Conclusion

Because the Defendants did not produce competent evidence sufficient to rebut the *Parsons* presumption, the Commission did not err when it denied Defendants' request to cease payments for Plaintiff's continued medical treatment.

AFFIRMED.

Judge DILLON concurs by separate opinion.

Judge GRIFFIN joins in separate opinion.

No. COA22-296 – *Brewer v. Rent-A-Center*

DILLON, Judge, concurring.

Most mandatory presumptions merely shift a burden of production to the opposing party. However, under the current state of our jurisprudence, the *Parsons* presumption also shifts the burden of proof to the opposing party (the employer). In this case, it may be that Defendants produced evidence from which the Commission could reasonably have found Plaintiff's requested medical treatment is not related to the compensable injuries he suffered in 2010. But because the Commission essentially found by the greater weight of the evidence that the requested treatment is related to the 2010 injury, I concur.[1]

An employee seeking workers' compensation benefits "has the burden of proving that his claim is compensable." *Holley v. ACTS, Inc.*, 357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003). However, like plaintiffs in civil actions, an employee may be entitled to a presumption of a certain (presumed) fact he must otherwise prove where another (basic) fact has been established.

_____

[1] We recognized in *Parsons* that it was "unjust" to require an employee "to re-prove causation each time [he] seeks treatment for" his compensable injury. 126 N.C. App. 540, 542, 485 S.E.2d 867, 869 (1997). We extended *Parsons* to situations where an employee never proves causation in the first instance because the employer has admitted a claim by filing a Form 63. *Gonzalez v. Tidy Maids*, 239 N.C. App. 469, 768 S.E.2d 886 (2015). In this case, Defendants filed a Form 63, admitting that Plaintiff's injuries to his "neck" and "back" (and other body parts) were caused, at least in part, by his workplace fall. *See, e.g., Counts v. Black & Decker*, 121 N.C. App. 387, 465 S.E.2d 343 (1996) (employee entitled to benefits where work-related is not the sole cause of his disability). We have suggested that the presumption may be rebutted where the Commission finds credible the testimony of an employer's expert that the work-related factor which contributed to an employee's original discomfort had resolved, and that his current discomfort is caused solely by a non-work related factor as *McLeod v. Wal-Mart*, 208 N.C. App. 555, 560, 703 S.E.2d 471, 475 (2010).

The term presumption "is often loosely used." *Henderson Cty. v. Osteen*, 297 N.C. 113, 117, 254 S.E.2d 160, 163 (1979). For example, it is sometimes used to describe a mere inference:

> [A] presumption has a technical force of weight, and the [fact-finder], in the absence of sufficient proof to overcome it, should find in accordance with the presumption;
>
> but in the case of a mere inference there is no technical force attached to it. The [fact-finder], in case of an inference, [is] at liberty to find the ultimate fact one way or the other as they may be impressed by the [evidence].

*Cogdell v. Wilmington & W. R. Co.*, 132 N.C. 852, 854, 44 S.E.2d 618, 619 (1903). With an inference, the factfinder *may* find a certain fact based on the presence of a basic fact, even if the opposing party has not offered any rebuttal evidence. For example, where a factfinder finds that a party intentionally destroys evidence, it may infer the evidence would have been unfavorable to the party who destroyed it, though "[n]othing compels the factfinder to ultimately draw [this] inference." *Reynolds v. Third Motor*, 379 N.C. 524, 540, 866 S.E.2d 869, 888 (2021). This type of presumption is sometimes referred to as a "permissive" presumption. *See State v. Malachi*, 371 N.C. 719, 731 n.4, 821 S.E.2d 407, 417 (2018) ("[E]videntiary presumptions are either 'permissive,' 'conclusive,' or 'mandatory'[.]")

However, where a presumption is a *true presumption*, "the presumed fact must be found to exist unless sufficient evidence of the nonexistence of the basic

fact is produced or unless the presumed fact is itself disproven." *Henderson*, 297 N.C. at 117, 254 S.E.2d at 163. For example, where a factfinder finds that an insured individual covered for an accidental death suffered a violent, unexplained death by external means, it *must* be presumed that the death was accidental if the insurance company does not offer sufficient rebuttal evidence. *Moore v. Union Fid. Life Ins. Co.*, 297 N.C. 375, 381, 255 S.E.2d 160, 164-65 (1979). In such case, sufficient rebuttal evidence could be offered either by showing the basic fact (that the death was violent and unexplained) was not true or the presumed fact (that the death was not accidental) was not true. This true presumption is also referred to as a mandatory presumption. *See Malachi*, *supra*.[2]

This appeal concerns whether Defendants rebutted the *Parsons* presumption. The *Parsons* presumption is a true (mandatory) presumption, requiring the Commission as factfinder to presume as fact that the treatment sought by an employee is related to his injury which the Commission had previously found to be compensable. And as a true presumption, it is rebuttable.

With most true presumptions favoring a plaintiff, the burden of *proof* (also referred to as the burden of persuasion) regarding the presumed fact remains with

---

[2] Our Supreme Court in *Malachi* describes a third type of presumption, known as a "conclusive" presumption. *Malachi*, 371 N.C. at 731, n.4, 821 S.E.2d at 417. A conclusive presumption is an irrebuttable presumption: For example, in the past, where a plaintiff is under seven years of age, it is conclusively presumed that he "is incapable of contributory negligence" no matter the evidence offered by the defendant of the child's negligent behavior. *Walston v. Greene*, 247 N.C. 693, 696, 102 S.E.2d 124, 126 (1958).

the plaintiff, while the burden of *production* (also referred to as the burden of going forward) shifts to the defendant. Generally, where a plaintiff is entitled to a true presumption and has proven the basic fact, the presumed fact is deemed proved by the plaintiff unless the defendant has offered evidence sufficient for a reasonable jury to conclude the presumed fact does not exist. But if the defendant offers sufficient rebuttal evidence, the factfinder must weigh all the evidence to determine whether the plaintiff has proven the existence of the presumed fact.

For example, Rule 301 of our Rules of Evidence provides that a mandatory presumption "does not shift the burden of proof" to the defendant. N.C. R. Evid. 301 (2021). The Rule merely provides that "the presumed fact shall be deemed proved" unless the defendant meets his burden of production sufficient to rebut the presumption. *Id.* And a defendant meets this burden with evidence "sufficient to permit reasonable minds to conclude that the presumed fact does not exist." *Id.*

In workers' compensation law, where it is shown that an employee's death occurred while at work and no medical reason for the death can otherwise be adduced, the employee's estate is entitled to a presumption – the *Pickrell* presumption – that the death was work-related, rather than by suicide. *Pickrell v. Motor Convoy*, Inc., 322 N.C. 363, 369-70, 368 S.E.2d 582, 585-86 (1988). Our Supreme Court described the *Pickrell* presumption as a "true presumption", such that the death is presumed compensable unless the employer "come[s] forward with

4

some evidence that the death occurred as a result of a non-compensable cause[.]"

*Id.* at 371, 368 S.E.2d at 586. Only after the employer rebuts the presumption does

the Commission assess the credibility of the employer's rebuttal evidence, with the

burden of proof always with the employee's estate:

> In that event, the Industrial Commission should find the
> facts based on all the evidence adduced, taking into
> account its credibility, and drawing such reasonable
> inferences from the credible evidence as may be
> permissible, the burden of persuasion remaining with
> the claimant.

*Id.*

Also in workers compensation law, there is a presumption – known as the

*Watkins* presumption – that an employee's compensable disability continues until

he returns to work. *See Watkins v. Cent. Motor Lines, Inc.*, 279 N.C. 132, 137, 181

S.E.2d 588, 592 (1971). However, it is a little less clear whether the *Watkins*

presumption merely shifts the burden of production (the burden of coming forward)

to the employer to show that the employee is capable of gaining employment or if

the presumption also shifts the burden of proof to the employer.

For instance, in a 1997 case, our Supreme Court suggests the presumption

merely shifts the burden of production, stating that "the employee need not present

evidence . . . unless and until the employer . . . *comes forward with evidence* to show"

the existence of a suitable job which the employee can get. *Saums v. Raleigh*

*Community Hosp.*, 346 N.C. 760, 763-64, 487 S.E.2d 746, 749 (1997) (quoting *Kennedy v. Duke Univ. Med. Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990)). However, though our Court in *Kennedy* affirmed a Commission's determination that an employer did not adequately rebut the presumption, in part, because the Commission "has the exclusive authority to assign the weight to the evidence which was presented." *Kennedy*, 101 N.C. App. at 33, 398 S.E.2d at 682. In any event, our Supreme Court in *Saums* does not quote this language in *Kennedy* and otherwise reminds that "the claimant has the burden of proving the existence of his disability and its extent." *Saums*, 346 N.C. at 763, 487 S.E.2d at 749.

Three years after *Saums*, our Supreme Court in *dicta* quotes *Saums* and *Kennedy*, but suggests that the *Watkins* presumption also shifts the burden of proof to the employer:

> "Likewise, in order to rebut plaintiff's claim of ongoing partial disability, in the event such issue arises, defendants have the burden of proving 'not only suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations.' *Saums* [citation] (quoting *Kennedy* [citation].")

*Saunders v. Edenton Ob/Gyn Ctr.*, 352 N.C. 136, 141-42, 530 S.E.2d 62, 66 (2000).

It is unclear whether our Supreme Court has intended to create a rule that the *Watkins* presumption shifts the burden of proof to the employer. Indeed, that

6

Court has noted that sometimes courts use "careless speech" at times conflating burden of proof with the burden of production:

> The terms, "the burden of the issue," and "the burden of proof," and "the duty to go forward with evidence," have given much perplexity to both the trial and appellate courts. The definition and the office of these terms, and their application to concrete cases, have been "often blurred by careless speech." (*Hill v. Smith,* 260 U.S. 592.)

*Hunt v. Eure*, 189 N.C. 482, 484, 127 S.E. 593, 594 (1925). *See also Speas v. Merchants' Bank & Trust Co.*, 188 N.C. 524, 526, 125 S.E. 398, 399-400 (1924).

The *Parsons* presumption that is the subject of this appeal was created by our Court. In *Parsons*, our Court suggests that the presumption being created shifted the burden of proof to the employer to show that subsequent medical treatment was not related to the compensable injury, stating that the Commission erred "placing the burden on plaintiff to prove causation[.]" *Parsons*, 126 N.C. App. at 542, 485 S.E.2d at 869.

Our Court has repeatedly described the burden on the employer as a burden of proof and held that it is appropriate for the Commission *to weigh* the employer's evidence to determine whether the presumption had been rebutted (rather than merely determining whether the employer's evidence is sufficient to cause a reasonable factfinder to find the new medical treatment was not related to the compensable injury). *See, e.g., Gross v. Gene Bennett*, 209 N.C. App. 349, 351, 703

7

S.E.2d 915, 917 (2011) ("the burden of proof is shifted from the plaintiff to the defendant [to prove causation]"); *Miller v. Mission*, 234 N.C. App. 514, 519, 760 S.E.2d 31, 35 (2014) (the *Parsons* presumption is rebutted by the employer, "the burden of proof shifts back to the plaintiff"); *Kluttz-Ellison v. Noah's Playloft Preschool*, 283 N.C. App. 198, 211, 873 S.E.2d 414, 423 (2022) (the Commission could weigh employer's rebuttal evidence when determining whether the evidence was sufficient to rebut the *Parsons* presumption); *Gonzalez v. Tidy Maids*, Inc., 239 N.C. App. 469, 477-78, 768 S.E.2d 886, 893 (2015) (same); *McLeod v. Wal-Mart Stores, Inc.*, 208 N.C. App. 555, 560, 703 S.E.2d 471, 475 (2010) (same); *Spain v. Spain*, 236 N.C. App. 507, 765 S.E.2d 556 (2014) (unpublished) (rejecting an employer's argument that the *Parsons* presumption works like Rule 301 presumptions, which do not shift the burden of proof).

There are older decisions from our Court, however, suggesting that the *Parsons* presumption merely shifts the burden of production to the employer. *See, e.g.*, *Pomeroy v. Tanner*, 151 N.C. App. 171, 182, 565 S.E.2d 209, 216-17 (2002) (*Parsons* is a "rebuttable presumption" where "the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury); *Reinninger v. Prestige*, 136 N.C. App. 255, 259, 523 S.E.2d 720, 723 (1999) (same).

8

Judge Griffin joins in separate concurrence.